UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRAVIER PRODUCTIONS, INC. and WOODY ALLEN,<br><br>　　　　Plaintiffs,<br>vs.<br><br>AMAZON CONTENT SERVICES, LLC, and AMAZON STUDIOS, LLC,<br><br>　　　　Defendant. | Case No. 1:19-cv-01169<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIFTH, SIXTH, SEVENTH, AND EIGHTH CAUSES OF ACTION** |

I.   INTRODUCTION

In August 2017, Defendant Amazon Content Services, LLC entered into an agreement with Woody Allen's production company, Gravier Productions, Inc., to acquire certain rights in the next four motion pictures filmed by Allen. (Compl. ¶¶ 24-33.) Just over a month later, Allen's son Ronan Farrow published an investigative article in The New Yorker detailing multiple reports of serious sexual misconduct by film producer Harvey Weinstein.[1]  The article became the catalyst for a broad public reckoning over the persistence of sexual harassment in entertainment and other industries.

Despite immediate consensus on the importance of acknowledging and addressing this issue, Allen made a series of public comments suggesting that he failed to grasp the gravity of the issues or the implications for his own career. Allen expressed sympathy for Weinstein as well as his victims, describing the situation as "very sad for everybody involved."[2]  Then Allen added: "You don't want it to lead to a witch-hunt atmosphere, a Salem atmosphere, where every guy in an office who winks at a woman is suddenly having to call a lawyer to defend himself."[3] Several months later, in January 2018, Allen's daughter Dylan Farrow recounted her memories

---

[1] *See* Ronan Farrow, *From Aggressive Overtures to Sexual Assault: Harvey Weinstein's Accusers Tell Their Stories*, The New Yorker (Oct. 10, 2017), https://www.newyorker.com/news/news-desk/from-aggressive-overtures-to-sexual-assault-harvey-weinsteins-accusers-tell-their-stories.

[2] Daniel Kreps, *Woody Allen: 'Harvey Weinstein Thing Is Very Sad for Everybody'*, Rolling Stone (Oct. 15, 2017), https://www.rollingstone.com/culture/culture-news/woody-allen-harvey-weinstein-thing-is-very-sad-for-everybody-125485/.

[3] *Id.*

of Allen's sexual abuse.[4]  Allen publicly dismissed those statements as "cynically using" #MeToo for attention.[5]

Allen's statements came out just as Amazon and Allen were preparing to promote Allen's film *Wonder Wheel*, effectively sabotaging those efforts.  The response from the film industry was swift and damning.  Scores of actors and actresses expressed profound regret for having worked with Allen in the past, and many declared publicly that they would never work with him in the future.[6]  In response, Allen doubled down with further public statements, claiming in an interview that he "should be the poster boy for the Me Too movement"[7] because he had "only [been] accused by one woman in a child custody case."[8]  Appearing to understand how his comments collectively would impact his recent and future films, Allen himself concluded: "I am a pariah."[9]

Understood in the broader context, Allen's actions and their cascading consequences ensured that Amazon could never possibly receive the benefit of its four-picture agreement (despite already having paid Allen a $10 million advance upon signing).  As a result, Amazon

---

[4] Sopan Deb, *Dylan Farrow Accuses Woody Allen of Sexual Abuse in TV Interview*, N.Y. Times (Jan. 18, 2018), https://www.nytimes.com/2018/01/18/movies/dylan-farrow-woody-allen.html.

[5] *Id.*

[6] These include, among others, Judd Apatow, Haley Atwell, Cate Blanchett, Rachel Brosnahan, Michael Cain, Timothee Chalamet, Colin Firth, Greta Gerwig, Kathy Griffin, Rebecca Hall, David Krumholtz, Griffin Newman, Rosie O'Donnell, Ellen Page, Freida Pinto, Natalie Portman, Peter Sarsgaard, and Mira Sorvino.  *See* Alissa Wilkinson, *Every Actor Who Has Publicly Expressed Regret For Working With Woody Allen, So Far*, Vox (updated Mar. 13, 2018), https://www.vox.com/culture/2018/1/16/16896392/actors-regret-woody-allen-dylan-farrow-greta-gerwig-timothee-chalamet-michael-caine.

[7] Ella Alexander, *Woody Allen Really Thinks He Should Be A "Poster Boy" for the #MeToo Movement*, Harper's Bazaar (June 5, 2018), https://www.harpersbazaar.com/uk/culture/culture-news/a21078714/woody-allen-really-thinks-he-should-be-a-poster-boy-for-the-metoo-movement/ .

[8] *Id.*

[9] Daphne Merkin, *Introducing Soon-Yi Previn*, Vulture (Sept. 16, 2018), https://www.vulture.com/2018/09/soon-yi-previn-speaks.html.

was justified in terminating its relationship with Allen, and Plaintiffs ultimately will not recover any of the relief they seek.  At this stage, however, Amazon moves only to dismiss four of Plaintiffs' causes of action that are duplicative of their central breach claims or otherwise fail as a matter of law.

## II.   FACTUAL ALLEGATIONS

For the purposes of this motion to dismiss only, Amazon takes Plaintiffs' allegations as true.  Plaintiffs allege as follows in their complaint:

In July 2016, Amazon and Gravier entered into a film deal, pursuant to which Amazon acquired distribution rights in Allen's film *Wonder Wheel*.  (*Id.* ¶ 21.)  Amazon engaged in significant media and marketing efforts around the film in order to execute a successful theatrical release and awards campaign.  (*Id.*)

More than a year later, in August 2017, but prior to Allen's public comments and the unsuccessful promotion of *Wonder Wheel*, Amazon and Gravier entered into a Multipicture Acquisition Agreement (the "MAA"), which set forth the terms under which Amazon would acquire certain rights in Allen's next four pictures.  (*Id.* ¶ 24 & Ex. A-1.)  Each of those films—*Rainy Day in New York* and untitled 2018, 2019, and 2020 features (collectively, the "Allen Films")—was deemed to be licensed pursuant to a stand-alone agreement in the same form as the prior *Wonder Wheel* agreement, but with changes as specified in the MAA.  (*Id.* ¶¶ 26-27, 30-31 & Ex. A-1 ¶ 1.)  Pursuant to those four stand-alone agreements—the Rainy Day Agreement, 2018 Allen Film Agreement, 2019 Worldwide Allen Film Agreement, and 2020 Worldwide Allen Film Agreement (collectively with the MAA, the "Allen Film Agreements")—Amazon agreed to theatrically release the films in specified markets and to pay both a minimum guarantee and certain additional amounts based on the success of each film.  (*Id.* ¶¶ 28-29, 32-33.)

In June 2018, after post-production work on *A Rainy Day in New York* had been completed, Defendants advised Plaintiffs that they were terminating the MAA and did not intend to distribute or otherwise exploit the Allen Films on account of "supervening events, including renewed allegations against Mr. Allen, his own controversial comments, and the increasing refusal of top talent to work with or be associated with him in any way." (*Id.* ¶¶ 39-40.) On July 11, 2018, Plaintiffs sent Amazon formal notice of anticipatory breach and demanded that Amazon cure its breach within 15 business days. (*Id.* ¶ 43.) After efforts to reach an agreed resolution stalled, Plaintiffs filed suit. (*Id.*)

### III. LEGAL STANDARD

To survive a motion to dismiss, a claim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is "a standard that asks for more than a sheer possibility that a defendant has acted unlawfully." *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018). A complaint that offers "labels and conclusions" or "a formalistic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. For purposes of a motion to dismiss, a complaint "is deemed to include any written instrument attached to it as an exhibit or any statements incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

### IV. ARGUMENT

**A. Plaintiffs Have Not Adequately Pled Their Fifth And Seventh Claims For Relief, For Breach Of The MAA And The Implied Covenant Thereunder.**

In their Fifth and Seventh Claims for Relief, Plaintiffs allege that Amazon breached the express terms of the MAA, as well as the covenant of good faith and fair dealing implied therein, by failing and refusing to "provide financing for each of the Allen Films," "pay Gravier

- 4 -

minimum guarantee payments totaling in excess of $68,000,000," "pay Gravier additional amounts based on the success of each of the Allen Films," and "distribute each of the Allen Films widely."  (Compl. ¶¶ 88-96, 102-106.)  These obligations, however, do not arise under the MAA.  Rather, the MAA specifically states that each of the Allen Films is licensed pursuant to "an independent, standalone agreement" (each, a "Picture Agreement"), and that, once a picture is deemed licensed, "any claim for damages with respect to a Picture may be brought *only under and with respect to the applicable Picture Agreement under which the Picture is licensed* as if the Picture Agreement were a standalone agreement."  (*Id*. Ex. A-1 ¶ 1 (emphasis added).)  Plaintiffs explicitly acknowledge that each of the Allen Films has been licensed pursuant to a stand-alone agreement (*id.* ¶¶ 27, 31), and Plaintiffs plead independent breach claims based upon Amazon's alleged failure to comply with its funding and distribution obligations thereunder (*id.* ¶¶ 88-96, 97-101).  Simply put, Plaintiffs have not alleged any actionable breaches of the MAA itself.[10]

Moreover, even if these claims were not explicitly barred, they would fail for lack of damages.  In addition to the language quoted above, the parties agreed in the MAA to "WAIVE ANY AND ALL CLAIMS TO DAMAGES OF ANY KIND UNDER THIS AGREEMENT WITH RESPECT TO ANY PICTURE LICENSED PURSUANT TO A PICTURE AGREEMENT" and to instead "BRING ANY SUCH CLAIMS ONLY UNDER THE APPLICABLE PICTURE AGREEMENT."  (*Id.* Ex. A-1 ¶ 9(f).)  It is therefore not surprising

---

[10] There are provisions of the MAA that continue to apply even after the Allen Films have been deemed licensed pursuant to the stand-alone Picture Agreements—*i.e.*, those related to payment of a $10,000,000 advance (Compl. Ex. A-1 ¶ 6) and an exclusive "first look" at other literary and visual materials that Plaintiffs intend to exploit (*id.* Ex. A-1 ¶ 7).  Plaintiffs, however, do not allege that any of those provisions have been breached.  In fact, they specifically plead that the $10,000,000 advance has been paid in full.  (*Id.* ¶ 34.)

that Plaintiffs' prayer for relief identifies only monies allegedly due under the individual Picture Agreements.  (*Id.* (Prayer for Relief).)  Without recoverable damages, Plaintiffs cannot state viable claims for breach of the MAA and implied covenant thereunder.  *See Sec. Plans, Inc. v. Cuna Mut. Ins. Soc.*, 726 Fed. Appx. 17, 19 n.1 (2d Cir. 2018) ("Under New York law, proof of damages is an element of both breach of contract and breach of the implied covenant of good faith and fair dealing claims."); *LoDuca Assocs., Inc. v. PMS Const. Mgmt. Corp.*, 936 N.Y.S.2d 192, 192 (App. Div. 1st Dept. 2012) (dismissing causes of action because contract provided that "no damages" could be awarded for the complained-of conduct).[11]

For each of these reasons, the Court should dismiss Plaintiffs' Fifth and Seventh Claims for Relief, for breach of the MAA and the implied covenant thereunder.

### B. Plaintiffs Have Not Adequately Pled Their Sixth Claim For Relief, For Breach Of Implied Covenant Under The Rainy Day Agreement.

In their Sixth Claim for Relief, Plaintiffs allege that Amazon breached the implied covenant of good faith and fair dealing that is implied in the Rainy Day Agreement by "repudiating the agreement without cause," "refusing to distribute [*A Rainy Day in New York*]," and refusing to "pay the minimum guarantee" due under that agreement.  (Compl. ¶¶ 97-101.) This is precisely the same alleged conduct that serves as the basis for Plaintiffs' First Claim for Relief, for breach of the Rainy Day Agreement.  (*Id.* ¶¶ 44-54.)

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract."  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir.2002).  In other words, "a breach of the implied covenant is not a separate cause of action."  *Payday Advance Plus, Inc. v.*

---

[11] Both the MAA and the stand-alone Picture Agreements are governed by New York law. (Compl. Ex. A-1 ¶ 9(k); *id.* Ex. A-2 ¶ 25(iv).)

*Findwhat.com, Inc.,* 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007).  Thus, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *La. Mun. Police Employees' Ret. Sys. v. JPMorgan Chase & Co.*, 2013 WL 3357173, at *9 (S.D.N.Y. July 3, 2013) (citation omitted).

Here, Plaintiffs' claims for breach of the Rainy Day Agreement and for breach of the implied covenant thereunder are based on precisely the same agreement and precisely the same alleged conduct.  Plaintiffs further seek the same damages in both causes of action.  (Compl. ¶¶ 54, 101.)  Because Plaintiffs' implied covenant claim "arises from the same operative facts and seeks the same damages as the breach of contract claim," it should be dismissed.  *NYAHSA Servs., Inc., Self–Ins. Trust v. Recco Home Care Servs., Inc.,* 141 A.D.3d 792, 794 (N.Y. App. Div. 2016).

### C. Plaintiffs Have Not Adequately Pled Their Eighth Claim For Relief, For Unjust Enrichment.

In their Eighth Claim for Relief, Plaintiffs allege that Defendants' repudiation of the Allen Film Agreements after having received the benefits of an association with Allen constitutes unjust enrichment.  (Compl. ¶¶ 107-11.)  Plaintiffs, however, fail to plead a viable claim for relief.

In the first instance, Plaintiffs' unjust enrichment claim is foreclosed by their contract claims.  Under governing New York law, "[t]he notion of unjust enrichment applies where there is no contract between the parties." *Md. Casualty Co. v. W.R. Grace and Co.,* 218 F.3d 204, 212 (2d Cir. 2000).  A claim for unjust enrichment therefore "cannot survive when there is no dispute that a valid contract existed between the parties." *Liu v. Beth Israel Med. Ctr.*, 2003 WL 21488081, at *4–5 (S.D.N.Y. June 26, 2003); *see Ohio Players, Inc. v. Polygram Records, Inc.*,

2000 WL 1616999, at *4 (S.D.N.Y. Oct. 27, 2000) ("Where a contract governs the subject matter involved, … a claim for unjust enrichment should be dismissed.").[12]  Plaintiffs allege that they have conferred benefits upon Defendants through their "commitment *under the Allen Film Agreements* to produce between four and six films for distribution by Defendants." (Compl. ¶ 108.)  In other words, the unjust enrichment claim not only relates to but *arises from* the written contracts that have allegedly been breached.  Because Plaintiffs do not dispute the existence of a valid contract between the parties, their unjust enrichment claim must be dismissed.  *Liu*, 2003 WL 21488081, at *4–5.

Apparently recognizing this shortcoming, Plaintiffs allege that Defendants have been unjustly enriched not only by Plaintiffs' commitments under the Allen Film Agreements, but also by Defendants' "extensive publicity of their relationship with Mr. Allen and Gravier to promote and enhance Amazon Studios' and Amazon Content's film production and distribution business." (Compl. ¶ 108.)  The Allen Film Agreements, however, expressly grant to Amazon the right to publicize those agreements (Compl. Ex. A-1 ¶ 9(c); *id.* Ex. A-2 ¶ 16), such that the written contracts cover the same subject matter as the alleged unjust enrichment.  *See Goldstein v. CIBC World Markets Corp.*, 776 N.Y.S.2d 12, 14 (App. Div. 1st Dept. 2004) ("A claim for unjust enrichment, or quasi contract, may not be maintained where a contract exists between the parties covering the same subject matter.").

---

[12] This rule exists because contract damages are "intended to give the injured party the benefit of the bargain by awarding a sum of money that will, to the extent possible, put that party in as good a position as it would have been in had the contract been performed." *Goodstein Const. Corp. v. City of New York*, 80 N.Y.2d 366, 373 (1992).  If an unjust enrichment claim could coexist alongside a breach of contract claims, plaintiffs could seek not only the "benefit of the bargain," but also amorphous damages based on other benefits that they believe their performance—or here, merely their "commitment" to perform—conferred.

Moreover, the only "publicity" that Plaintiffs plead relates to *prior* written contracts between Allen and Amazon that have been fully performed—*not* the Allen Film Agreements at issue in this action. (*See* Compl. ¶ 20 (describing publicity in connection with 2016 distribution agreement for *Cafe Society*); *id.* ¶ 21 (describing publicity in connection with 2016 distribution agreement for *Wonder Wheel*).) Plaintiffs do not allege *any* publicity in connection with the Allen Film Agreements that Defendants are alleged to wrongfully have repudiated, and Plaintiffs fail to plead an unjust enrichment claim that is plausible on its face for this reason alone.

For each of these reasons, the Court should dismiss Plaintiffs' Eighth Claim for Relief for unjust enrichment.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and dismiss Plaintiffs' Fifth, Sixth, Seventh, and Eighth Claims for Relief.

Dated: April 3, 2019　　　　　　　　　　　HUESTON HENNIGAN LLP

By: */s/ Robert N. Klieger*

Robert N. Klieger (pro hac vice)
Moez M. Kaba
Michael Todisco (pro hac vice)
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

*Attorneys for Defendants Amazon Content Services, LLC. and Amazon Studios, LLC*

## CERTIFICATE OF SERVICE

I certify that on April 3, 2019, a copy of the above was filed through the CM/ECF system, which will send copies to all counsel of record.

*/s/ Robert N. Klieger*
Counsel for *Defendants*
