**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GRAVIER PRODUCTIONS, INC., and WOODY ALLEN,<br><br>Plaintiffs,<br><br>– against –<br><br>AMAZON CONTENT SERVICES, LLC, and AMAZON STUDIOS, LLC,<br><br>Defendants. | Case No. 1:19-CV-01169-DLC |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS COUNTS V, VI, VII, AND VIII OF THE COMPLAINT

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Julia M. Beskin
juliabeskin@quinnemanuel.com
Jomaire A. Crawford
jomairecrawford@quinnemanuel.com
Donald J. Reinhard, II
donaldreinhard@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000 (tel.)

John B. Quinn
johnquinn@quinnemanuel.com
Gary E. Gans (*pro hac vice*)
garygans@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000 (tel.)

*Attorneys for Plaintiffs Gravier Productions, Inc. and Woody Allen*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT .......................................................................................................................... 4

A.    Plaintiffs Assert Actionable Breaches of Contract Under the MAA ................................. 4

B.    Plaintiffs Are Permitted to Plead Amazon's Breaches in the Alternative .......................... 8

C.    Plaintiffs Assert Actionable Breaches Under the Implied Covenant of Good Faith and
       Fair Dealing Under the MAA ........................................................................................ 8

D.    Plaintiffs Have Adequately Pleaded a Non-Duplicative Claim for Breach of the Implied
       Covenant of Good Faith and Fair Dealing Under the Rainy Day Agreement ................. 10

E.    Plaintiffs Have Adequately Pleaded Their Unjust Enrichment Claims Against Amazon
       Studios and Amazon Content ...................................................................................... 13

       1.    Amazon Studios Was Not a Party to the MAA or Allen Agreements So the Unjust
              Enrichment Claim As to Amazon Studios Is Proper ............................................ 13

       2.    Dismissal of the Unjust Enrichment Claim Would Be Premature As Courts Permit
              Alternative Pleading at the Motion to Dismiss Stage ........................................... 14

CONCLUSION ..................................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Barton v. Concept Labs., Inc.*,
  No. 08-CV-591-JTC, 2010 WL 502831 (W.D.N.Y. Feb. 10, 2010) ........................................ 6

*Basso v. New York Univ.*,
  No. 16-CV-7295(VM), 2017 WL 1019505 (S.D.N.Y. Feb. 24, 2017) .................................. 15

*Chadirjian v. Kanian*,
  123 A.D.2d 596, 506 N.Y.S.2d 880 (2d Dep't 1986) .............................................................. 14

*Chance v. Armstrong*,
  143 F.3d 698 (2d Cir. 1998) ....................................................................................................... 4

*Chenoweth & Faulkner, Inc. v. Metro Mobile CTS, Inc.*,
  No. 87-CV-6294, 1988 WL 52777 (S.D.N.Y. May 18, 1988) ............................................. 6, 7

*Citi Mgmt. Grp., Ltd. v. Highbridge House Ogden, LLC*,
  45 A.D.3d 487, 847 N.Y.S.2d 33 (1st Dep't 2007) ................................................................. 12

*Creative Foods Corporation v. Chef Francisco, Inc.*,
  458 N.Y.S.2d 917, 92 A.D.2d 462 (1st Dep't 1983) .................................................................. 7

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ....................................................................................................... 4

*Dragushansky v. Nasser*,
  No. 12 CV 9240 TPG, 2013 WL 4647188 (S.D.N.Y. Aug. 29, 2013) .................................... 15

*Dweck Law Firm, L.L.P. v. Mann*,
  340 F. Supp. 2d 353 (S.D.N.Y. 2004) ........................................................................................ 8

*Eze v. City Univ.*,
  No. 11–CV–2454, 2011 WL 6780652 (E.D.N.Y. Dec. 27, 2011) .............................................. 8

*Franze v. Bimbo Foods Bakeries Distribution, LLC*,
  No. 717CV03556NSRJCM, 2019 WL 1244293 (S.D.N.Y. Mar. 15, 2019) ...................... 8, 15

*Freidman v. General Motors Corp.*,
  721 F. Supp. 2d 218 (S.D.N.Y. 2010) ........................................................................................ 4

*Goldman v. Belden*,
  754 F.2d 1059 (2d Cir. 1985)...................................................................................................... 4

*Italian & French Wine Co. of Buffalo, Inc. v. Negociants U.S.A., Inc.*,
  842 F. Supp. 693 (W.D.N.Y. 1993) ........................................................................................... 6

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
  No. 08CIV9116(PGG), 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) ........................................ 10

*Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers*,
  593 F.3d 95 (1st Cir. 2010) ......................................................................................................... 6

*Laugh Factory, Inc. v. Basciano*,
  608 F. Supp. 2d 549 (S.D.N.Y. 2009) ....................................................................... 6

*Lemus v. Manhattan Car Wash, Inc.*,
  No. 06 Civ. 15486, 2010 WL 1372705 (S.D.N.Y. Mar. 25, 2010) ........................... 8

*Liu v. Beth Israel Med. Ctr.*,
  No. 02 CIV. 2034 (DLC), 2003 WL 21488081 (S.D.N.Y. June 26, 2003) ............... 14

*M/A-COM Sec. Corp. v. Galesi*,
  904 F.2d 134 (2d Cir. 1990) ..................................................................................... 9

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) .............................................................................................. 13

*Maryland Cas. Co. v. W.R. Grace & Co.*,
  218 F.3d 204 (2d Cir. 2000) ..................................................................................... 14

*Ohio Players, Inc. v. Polygram Records, Inc.*,
  No. 99CIV.0033, 2000 WL 1616999 (S.D.N.Y. Oct. 27, 2000) ............................... 14

*Paramount Film Distrib. Corp. v. State of New York*,
  30 N.Y.2d 415 (1972) .............................................................................................. 13

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
  478 F. Supp. 2d 496 (S.D.N.Y. 2007) ....................................................................... 9

*Rowe v. Great Atl. & Pac. Tea Co.*,
  46 N.Y.2d 62, 385 N.E.2d 566 (1978) ....................................................................... 9

*Schneider v. Rola Const. Co.*,
  16 Misc. 2d 556, 183 N.Y.S.2d 955 (Sup. Ct. Suffolk Cnty. 1959) ......................... 7

*Sungchang Interfashion Co., Ltd. v. Stone Mountain Accessories, Inc.*,
  No. 12 Civ. 7280(ALC)(DCF), 2013 WL 5366373 (S.D.N.Y. Sept. 25, 2013) ............... 13, 14

*Twombly v. Bell Atl. Corp.*,
  550 U.S. 544 (2007) ................................................................................................. 4

*Vetromile v. JPI Partners, LLC*,
  706 F. Supp. 2d 442 (S.D.N.Y. 2010) ....................................................................... 8

## Rules

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1

## Other Authorities

Rest. (Second) of Contracts (1981) ................................................................................. 8

Plaintiffs Gravier Productions, Inc. ("Gravier") and Mr. Woody Allen (collectively, "Plaintiffs") submit this brief in opposition to Defendant Amazon Content Services, LLC ("Amazon Content") and Amazon Studios, LLC ("Amazon Studios") (collectively, "Defendants" or "Amazon")'s partial motion to dismiss the Fifth, Sixth, Seventh, and Eighth Claims for Relief pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").[1]

## PRELIMINARY STATEMENT

Plaintiffs commenced this action to recover damages from Amazon Content for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment based on Amazon's complete repudiation and termination—without any valid basis—of its multi-year obligations under the terms of *four* single motion picture license agreements (the "SPAs") and a multi-picture acquisition agreement (the "MAA") entered into between the parties.[2]  An unjust enrichment claim was also asserted against Amazon's film business, Amazon Studios, which was not a party to the MAA or the SPAs, but nevertheless reaped substantial benefits from its highly-publicized association with Mr. Allen—such that it would be unjust for Amazon Studios to retain those benefits in the face of Amazon's sudden and improper termination of these contracts.

Defendants seek to dismiss Plaintiffs' claims for (i) breach of contract and breach of the implied covenant under the MAA (but not Plaintiffs' claims for breach of the SPAs); (ii) breach

---

[1]  At the outset, Defendants dedicate the "Introduction" section of their Motion to a gross mischaracterization of certain public comments made by Mr. Allen and the film industry's purported response to those comments.  *See* Mot. at 1–2.  Plaintiffs strenuously disagree with Amazon's characterizations, but they are, in any event, irrelevant to Defendants' Motion, as Defendants do not even attempt to tether their Introduction to the legal arguments that follow.  Discovery will show that Amazon's spin on the facts is nothing short of revisionist history.

[2]  Capitalized terms used herein without definition shall have the respective meanings set forth in the complaint filed by Plaintiffs on February 7, 2019 (Dkt. No. 1) (the "Complaint").

of the implied covenant of good faith and fair dealing under the Rainy Day Agreement; and (iii) the unjust enrichment claim in its entirety.  The arguments advanced in support of Amazon's Motion are meritless for four reasons.

*First*, Amazon asserts that Plaintiffs' claim for breach of contract and breach of the implied covenant under the MAA fail because those claims can only be brought under the SPAs—but this argument ignores that Plaintiffs also plead an independent breach of the MAA.  *Second*, Amazon argues that Plaintiffs' implied covenant claim for the Rainy Day Agreement is duplicative of Plaintiffs' breach of contract claim for that agreement, but this ignores that the implied covenant claim is predicated on unique factual allegations that render these claims distinct and non-duplicative.  *Third*, Amazon argues that Plaintiffs' unjust enrichment claim is foreclosed by the parties' agreements, but this ignores that Amazon Studios is not a party to either the MAA or the SPAs, and courts permit unjust enrichment claims survive a motion to dismiss when asserted against non-party to a contract.  *Fourth*, and perhaps most important, Amazon ignores the weight of well-established authority in this District that permits parties to plead alternative and even inconsistent contract and quasi-contract theories of recovery at the motion to dismiss stage.

Accordingly, Amazon's partial motion to dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

Mr. Allen is one of the most critically acclaimed, iconic, and successful filmmakers of all time, and Gravier is his long-time, highly successful film production company.  In fact, when Amazon sought to develop and promote its incipient film business, it ambitiously targeted Mr. Allen in the hopes of entering into a profitable production arrangement with him.  As part of its aggressive courtship, Amazon convinced Mr. Allen and Gravier to abandon their existing film financing model and decades of relationships in the industry in favor of doing business with Amazon—while simultaneously promising to finance, distribute, and promote Mr. Allen's films

for the rest of his career.  Plaintiffs relied on these promises when inking its first deal and all subsequent deals with Amazon Content.  In the wake of each deal, Amazon and the media widely promoted this relationship with Mr. Allen, and it was this association that helped Amazon's content creation platform gain legitimacy in the eyes of the public and within Hollywood.

Seeking to further capitalize on their profitable relationship with Plaintiffs, the parties then entered into the MAA and the SPAs.  In doing so, Amazon Content explicitly agreed to (1) pay Plaintiffs minimum guarantees totaling $68,000,000 for Mr. Allen's next four films, (2) widely distribute and promote at least those four films, (3) pay Plaintiffs additional amounts based on the success of each film, and (4) consider licensing an additional two films at the conclusion of the four-picture deal.  Thus, the parties contemplated a ***multi-year*** relationship through which Amazon would acquire rights in and subsequently distribute four to six of Mr. Allen's films.  Although the contracts were heavily negotiated, there is no dispute that they do not contain a termination clause.

No sooner than the ink dried on the agreements, Plaintiffs began to spend significant time, effort, and money in the ensuing months to produce the first film contemplated by these multi-picture agreements, *A Rainy Day in New York*.  But instead of widely distributing and promoting this film—as Amazon Content contracted to do—Defendants purported to terminate the agreements in June 2018, ***after A Rainy Day had already been completed,*** and less than one year after the multi-picture deal had been reached.  In terminating the agreements, Amazon repudiated the four SPAs and the MAA in their entirety.  In furtherance of their breach, Amazon Content refused to make any contractually-owed, minimum guaranteed payments to Plaintiffs—while, tellingly, conceding that no term of the agreements granted either side the right to terminate.

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn

in the plaintiff's favor.  *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010).  The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  A complaint should not be dismissed if Plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face." *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007).  Therefore, the appropriate inquiry "is not whether a plaintiff is likely to prevail ultimately, but whether the [plaintiff] is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (citations omitted).

## ARGUMENT

### A.  Plaintiffs Assert Actionable Breaches of Contract Under the MAA

To state a claim for breach of contract under New York law, the following elements must be alleged: (1) the formation of a contract between the parties; (2) performance by the plaintiff; (3) failure of defendant to perform; and (4) damages.  *See Freidman v. General Motors Corp.*, 721 F. Supp. 2d 218, 224–25 (S.D.N.Y. 2010).[3]

Amazon contends that Plaintiffs have not asserted any actionable breaches of the MAA because the alleged breaches pertain to obligations that arise under the SPAs rather than the MAA. Mot. at 5.  Amazon also asserts that "even if these claims were not explicitly barred, they would fail for lack of damages."  *Id*.  This argument fails for a simple reason:  Plaintiffs have pleaded that Amazon Content committed an independent breach of the MAA through their wrongful termination—a breach that Amazon's Motion conveniently ignores.

---

[3]  The parties agree that New York law governs the MAA and SPAs.  *See, e.g.*, Compl. Ex. A ¶ 9(k) ("This Agreement will be governed by the laws of the State of New York, without reference to rules governing choice of law."); *see also* Mot. at 6 n.11 (same).

Amazon relies principally upon a clause within Section 9(f) of the MAA, which states that the parties agree to "WAIVE ANY AND ALL CLAIMS TO DAMAGES . . . UNDER THIS AGREEMENT WITH RESPECT TO ANY PICTURE LICENSED *PURSUANT TO A PICTURE AGREEMENT*." *Id.* (citing Compl. Ex. A ¶ 9(f)) (emphasis added).  However, this assumes that Plaintiffs' contract claims under the MAA rest solely on breaches of the SPAs.  This ignores the Complaint's allegations that Amazon Content breached the MAA through its improper and unjustified termination of the MAA (Compl. ¶¶ 2, 5, 39–43, and 92–94), which constitutes an independent breach of the MAA and which does not arise out of "any picture licensed pursuant to a picture agreement." Ex. A. 9(f) (emphasis omitted).[4]  As such, the portion of Section 9(f) that Amazon Content's Motion relies upon does not apply.[5]  Moreover, the Complaint specifically pleads that Plaintiffs were damaged by Amazon's wrongful termination: "Defendants' termination has interfered with Mr. Allen and Gravier's ability to meet certain obligations to outside investors and foreign distributors, which Mr. Allen and Gravier undertook in express reliance on Defendants' financial, promotional, and distribution commitments." *Id.* at ¶ 41.  And, contrary to Defendants' assertion, Plaintiffs' Prayer for Relief is not limited to the payments owed to them

---

[4]   To the extent that Defendants refute the Complaint's allegations regarding the MAA's lack of a termination provision, its repudiation of the MAA without cause, and the reasonable notice requirement, Plaintiffs have also asserted this claim under an implied covenant theory (*see, e.g.*, Compl. ¶¶ 92–94)—which, as discussed *infra* at Section D.2, can be plead in the alternative in this District at the motion to dismiss stage.  In other words, the Complaint asserts facts pertaining to Amazon's improper repudiation and termination of the MAA under both the breach of contract and implied covenant claims for relief.

[5]   There is no dispute that Section 9(f) does not foreclose any and all claims for breach of the MAA, as Amazon itself recognizes in its Motion. *See* Mot. at 5 n.10 (acknowledging that there are provisions of the MAA that give rise to obligations separate and apart from the SPAs, but asserting that Plaintiffs have not alleged that any of those provisions have been breached).

under the SPAs, but includes a claim for general and special damages.  Compl. at 27.  As such, Defendants' assertion that Plaintiffs' breach of the MAA claim fails for lack of damages is without merit.  Mot. at 6.

Under well-settled New York law, Amazon Content's unreasonable termination of the MAA is itself a contractual breach.  Amazon "ha[d] no right or authority to repudiate any of the terms of the MAA."  Compl. ¶ 94.  The MAA does not contain a termination provision, and Amazon concedes that it lacked any basis under the contract to terminate the MAA (or the SPAs) under the terms of the contracts.[6]  Under New York law, "a contract that does not contain a termination provision is terminable only upon reasonable notice."  *Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 556 (S.D.N.Y. 2009).[7]

Amazon does not and cannot credibly claim that its termination notice—which purported to terminate a multi-year, multi-million dollar, multi-picture agreement with ***immediate*** force and effect—satisfies the reasonable notice period required by New York law.  *See* Compl. Ex. B[8] (the

---

[6]   During the parties' Rule 16 conference, when the Court asked counsel for Amazon if "there is a provision of the agreement that [Amazon is] relying on when [asserting that Mr. Allen] was unable to deliver the benefits," counsel responded:  "There is not a specific provision that's been violated.  It's an implied covenant and frustration of purpose rather than a specific breach of a timing or other provision of the agreement."  *See* 4/12/19 Initial Conf. Hrg. Tr. at 6:24–7:8.

[7]   *See also Barton v. Concept Labs., Inc.*, No. 08-CV-591-JTC, 2010 WL 502831, at *4 (W.D.N.Y. Feb. 10, 2010) (citing *Italian & French Wine Co. of Buffalo, Inc. v. Negociants U.S.A., Inc.*, 842 F. Supp. 693, 699 (W.D.N.Y. 1993)); *Chenoweth & Faulkner, Inc. v. Metro Mobile CTS, Inc.*, No. 87 CIV. 6294 (MJL), 1988 WL 52777, at *2 (S.D.N.Y. May 18, 1988) ("When a contract contains express provisions regarding termination, these provisions will be binding upon the parties.  In the absence of an express provision, a contract is terminable after a reasonable duration with reasonable notice."); *Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers*, 593 F.3d 95, 100 (1st Cir. 2010) (same).

[8]   All exhibit citations refer to the exhibits attached to the Complaint – *e.g.*, Docket Nos. 1-1 (Ex. A); 1-2 (Ex. B); 1-3 (Ex. C); 1-4 (Ex. D); 1-5 (Ex. E).

"Termination Notice") (email purporting to "terminat[e] the Agreement with respect to each of the Pictures" such that Plaintiffs must "undertake *immediately* to make alternative distribution arrangements") (emphasis added).  New York law does not permit a party to "suddenly, and in the absence of reasonable notice, terminate [a] contract while the other is endeavoring in good faith to perform it."  *Schneider v. Rola Const. Co.*, 16 Misc. 2d 556, 560, 183 N.Y.S.2d 955, 959 (Sup. Ct. Suffolk Cnty. 1959).   Although what constitutes reasonable notice requires a case-by-case assessment,[9] one court in this jurisdiction held that a two-week notice period was too short to terminate a "continuing and ongoing business relationship between [the parties] for more than two years, . . . considering the fact that [the plaintiff] made arrangements . . . on behalf of [the defendant] for periods far in excess of the two weeks' notice of termination given."  *Chenoweth*, 1988 WL 52777, at *3.  In view of these factors, the court denied defendant's motion to dismiss, finding that the plaintiff adequately stated a claim for breach of implied contract.  Here, the facts are far more egregious.  Amazon purported to terminate the MAA and SPAs ***suddenly*** and without ***any*** notice despite the parties' nearly four-year relationship.  Their termination is all the more unreasonable given the nature of the film industry, where film production and distribution require costs and obligations to be incurred that cannot be undone on limited—or zero—notice.

In short, Amazon's motion to dismiss Plaintiffs' Fifth Claim for Relief (for breach of the MAA) should be denied because Amazon ignores that Plaintiffs pleaded an independent breach of the MAA—namely, Amazon's wrongful termination—to which their argument has no application.

---

[9]   Among the various factors that courts consider in assessing reasonableness, courts look to the standards of the particular industry involved.  *See, e.g.*, *Creative Foods Corporation v. Chef Francisco, Inc.*, 458 N.Y.S.2d 917, 92 A.D.2d 462 (1st Dep't 1983) (reasonableness of notice period determined by what is "customary in the industry").

**B.**     <u>Plaintiffs Are Permitted to Plead Amazon's Breaches in the Alternative</u>

Nor does Section 9(f) provide a basis to dismiss Plaintiffs' claims for obligations that also arise under the SPAs—including the payments owed under those agreements.  Courts in this District permit parties to plead alternative theories of liability at this stage.  *See, e.g.*, *Franze v. Bimbo Foods Bakeries Distribution, LLC*, No. 717CV03556NSRJCM, 2019 WL 1244293, at *3 (S.D.N.Y. Mar. 15, 2019) ("Alternative and even inconsistent theories are generally permitted where the legal nature of the claimant's right to recover and its opponent's liability are contingent on facts or circumstances not yet know[n] to the parties."); *Eze v. City Univ. of New York at Brooklyn Coll.*, No. 11–CV–2454, 2011 WL 6780652, at *6 (E.D.N.Y. Dec. 27, 2011) ("[A] plaintiff is generally permitted to plead inconsistent theories of liability in the alternative."); *Lemus v. Manhattan Car Wash, Inc.*, No. 06 Civ. 15486, 2010 WL 1372705, at *12 (S.D.N.Y. Mar. 26, 2010) (allowing plaintiff "to plead alternative theories of liability, between which he may later be required to choose").

**C.**     <u>Plaintiffs Assert Actionable Breaches Under the Implied Covenant of Good Faith and Fair Dealing Under the MAA</u>

"Under New York law, the implied covenant of good faith and fair dealing inheres in *every contract*."  *Vetromile v. JPI Partners, LLC*, 706 F. Supp. 2d 442, 454 (S.D.N.Y. 2010) (emphasis added); *see also* 2 Restatement (2d) of Contracts § 205 (1981).  "To state a cause of action for breach of the implied covenant of good faith and fair dealing, 'the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff.'"  *Dweck Law Firm, L.L.P. v. Mann*, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004) (citation omitted).

"[C]ourts enforce the implied covenant where an implied promise was 'so interwoven in the whole writing' of a contract as to be necessary for effectuation of the purposes of the contract."

*M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (citation omitted).  The implied covenant incorporates "any promises which a reasonable person in the position of the promisee would be justified in understanding were included."  *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007) (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 385 N.E.2d 566, 569 (1978)).

Here, the Complaint alleges at least three distinct promises that were so interwoven into the MAA that their incorporation is necessary for the full effectuation of the agreement as intended by the parties.  *First*, the MAA was never intended to be terminated, as evidenced by the absence of a termination provision; this created an implied promise that neither party could repudiate the MAA in the way Amazon has, and that its terms would not expire—at the very *earliest*—until each party's commitments and obligations under the various SPAs had been met.  The omission makes particular sense given the direct and tangible way that Amazon's nascent (and, later, developing) film business stood to benefit from an ongoing association with Mr. Allen.  *Second*, in exchange for agreeing to forego the services of highly-regarded professionals in the film industry by virtue of a deal with Amazon, Amazon was intended to be Mr. Allen's "home" for the remainder of his career; this also created an implied promise that the parties would abide by the terms of the MAA, and certainly not repudiate it irrespective of any legal or contractual right to do so.  *Id.* at ¶¶ 1 and 23.  *Third*, because Amazon Content contracted for the "options . . . to acquire two further films filmed by Allen" upon completion of the first four pictures, this created an implied promise that Amazon Content would license and finance ***at least four films*** and that the

parties were creating a continuous, long-term relationship that could yield even further production deals.  Compl. Ex. A (MAA at preamble).[10]

Amazon in its Motion makes no independent argument with regard to Plaintiffs' claim for breach of the implied covenant of the MAA, but simply lumps that claim together with their arguments as to Plaintiffs' claim for breach of the MAA.  It is not clear how or why Amazon believes those arguments support dismissal of Plaintiffs' implied covenant claim under the MAA, but in any event, for the reasons explained above, Amazon's arguments fail.  *See supra* at Section A.  Accordingly, Amazon's motion to dismiss Plaintiffs' Seventh Claim for Relief should be denied.

### D.  Plaintiffs Have Adequately Pleaded a Non-Duplicative Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Under the Rainy Day Agreement

"[T]o simultaneously plead breach of contract and implied covenant claims under New York law, a plaintiff must allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims."  *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08CIV9116 (PGG), 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009).

---

[10]   *See also id.* at ¶ 5(a) (granting "to Distributor the exclusive option to license the rights . . . to *two further films*, one with an Outside Delivery Date in 2021 (the 'WASP 2021') and the other with an Outside Delivery Date in 2022 [(the 'WASP 2022')]. . . .  For clarity, Distributor *hereby agrees to license and finance [the last two of the four films] in accordance with this Agreement.*  If Distributor does not exercise its option to acquire the WASP 2021, then Distributor will not have the option to license the WASP 2022, and *if Distributor does exercise the option to WASP 2021, it will also be deemed to have exercised its option to WASP 2022 (i.e., it's a two picture option).*") (emphases added).

Amazon Content asks this Court to dismiss Plaintiffs' Sixth Claim for Relief (*i.e.*, breach of implied covenant claim under the Rainy Day Agreement) as duplicative of the First Claim for Relief (*i.e.*, breach of the Rainy Day Agreement, which Amazon has not moved to dismiss).  Mot. at 6–7.[11]  Amazon ignores that the Complaint alleges distinct, bad faith conduct that reaches beyond the allegations associated with Amazon Content's breach of that agreement—and, even if this were not the case, Plaintiffs are permitted to plead in the alternative, and thus it would be premature to dismiss Plaintiffs' implied covenant claim on the basis that it is duplicative at this juncture.

### 1.   Plaintiffs' Implied Covenant Claim Relies Upon Non-Duplicative Facts and Damages

The Complaint alleges for its breach of contract claim that Amazon Content repudiated the Rainy Day Agreement without cause, failed to pay the film's minimum guarantee, failed to pay additional amounts for the success of the film, and failed to release the film.  Compl. ¶¶ 47–53. However, for the implied covenant claim, Plaintiffs plead non-duplicative facts, including that Amazon sought  Plaintiffs' consent in January 2018 to push back the scheduled release of *A Rainy Day* until 2019, and then allowed Plaintiffs in the months that followed to expend money and resources to complete the film knowing that Amazon had no intention of paying the film's minimum guarantee or to distribute the film.  *Id.* at ¶¶ 36–37 and 100–01.

Because a party may—under New York law—maintain a claim for breach of implied covenant if based on allegations different than those underlying the accompanying breach of contract claim (*see supra* at Section D), and the Complaint alleges non-duplicative and distinct

---

[11]   *Compare* Compl. ¶¶ 44–54 (First Claim for Relief) with *id.* at ¶¶ 97–101 (Sixth Claim for Relief).

facts surrounding the production and anticipated release of *A Rainy Day*, Plaintiffs' implied covenant claim under the Rainy Day Agreement survives.

Moreover, and despite Amazon Content's assertions to the contrary, Plaintiffs' First and Sixth Claims for Relief do not seek identical damages.  Mot. at 7.  As the Complaint demonstrates, damages resulting from Amazon's breach of the Rainy Day Agreement do not mirror those flowing from the breach of the implied covenant inhering in that agreement.  Rather, the Complaint alleges that in reliance on Amazon's representations that they would release *A Rainy Day* in 2019, Plaintiffs completed the film and took steps to prepare for the rescheduled release—thereby incurring damages.  Compl. ¶¶ 36–37.  These damages are clearly distinct from the damages sought for Amazon's breach of the Rainy Day Agreement, which arise from Amazon's failure to make certain guaranteed and other payments.[12]

### 2.   Dismissal of Plaintiffs' Implied Covenant Claim Would Be Premature As Courts Permit Alternative Pleading at the Motion to Dismiss Stage

Not only does the Complaint sufficiently allege factually distinct breach of contract and implied covenant claims under the Rainy Day Agreement, but courts in this jurisdiction also permit pleading in the alternative for breach of contract and implied covenant claims at the motion to dismiss stage, even if it were to deem certain portions of the two claims duplicative.  *See, e.g.*, *Citi Mgmt. Group, Ltd. v. Highbridge House Ogden, LLC*, 45 A.D.3d 487, 487, 847 N.Y.S.2d 33, 34 (1st Dep't 2007) (permitting pleading in the alternative and thus "claims for breach of the implied

---

[12]    *Compare* Compl. ¶¶ 53–54 (seeking damages for the breach of contract claim that include "all payments due under the Rainy Day Agreement, including the remainder of the $9,000,000 minimum guarantee" and "Mr. Allen's writing and directing fees") with *id.* at ¶ 101 (seeking damages for the implied covenant claim that "includ[e] Plaintiffs' general damages" and other damages to be proven at trial).

covenant . . . should not be dismissed as duplicative of the breach-of-contract cause of action" based upon the allegations offered in support of each claim).

### E.   Plaintiffs Have Adequately Pleaded Their Unjust Enrichment Claims Against Amazon Studios and Amazon Content

To state a claim for unjust enrichment under New York law, the following elements must be alleged:  (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) equity and good conscience do not permit the defendant to retain what is sought to be recovered.  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011); *see also Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421 (1972) ("The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.").  Defendants argue that Plaintiffs' unjust enrichment claim is foreclosed by Plaintiffs' breach of contract claims, and that the claim should be dismissed because Plaintiffs have not alleged any publicity of the parties' relationship related to the MAA or SPAs.  Both arguments fail.

### 1.   Amazon Studios Was Not a Party to the MAA or Allen Agreements So the Unjust Enrichment Claim As to Amazon Studios Is Proper

Defendants first argue that Plaintiffs' unjust enrichment claim should be dismissed as duplicative of Plaintiffs' breach of contract claims.  This argument fails as to Amazon Studios because the Complaint does not assert *any* breach of contract claims against Amazon Studios— rather, unjust enrichment is the *sole claim* asserted against Amazon Studios.  *Compare* Compl. ¶¶ 44–106 (six claims asserted against Amazon Content) with *id.* at ¶¶ 107–11 (single unjust enrichment claim asserted against Amazon Studios).  Amazon Studios was not a party to any of the agreements that Amazon breached.  Thus, Defendants' argument for the dismissal of Plaintiffs' unjust enrichment claim as to Amazon Studios is contrary to New York law.  *See Sungchang Interfashion Co., Ltd. v. Stone Mountain Accessories, Inc.*, No. 12 Civ. 7280(ALC)(DCF), 2013

WL 5366373 at *19–20 (S.D.N.Y. Sept. 25, 2013) (declining to dismiss unjust enrichment claims against defendants who were not signatories to the operative contract); *Chadirjian v. Kanian*, 123 A.D.2d 596, 598, 506 N.Y.S.2d 880, 882 (2d Dep't 1986) ("An agreement may be implied under the doctrine of unjust enrichment in order to prevent one person who has obtained a benefit from another without ever entering into a contract with that person from unjustly enriching himself at the other party's expense[.]").

Amazon's own cited cases do not stand for a contrary position.  Indeed, their Motion concedes that "[t]he notion of unjust enrichment **applies where there is no contract between the parties**."  Mot. at 7 (citing *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212 (2d Cir. 2000)) (emphasis added).  Nothing in the other two cases cited by Amazon alters this principle.  In fact, both *Liu v. Beth Israel Med. Ctr.*, No. 02 CIV. 2034 (DLC), 2003 WL 21488081 (S.D.N.Y. June 26, 2003) and *Ohio Players, Inc. v. Polygram Records, Inc.*, No. 99CIV.0033, 2000 WL 1616999 (S.D.N.Y. Oct. 27, 2000) are factually inapposite as neither involves unjust enrichment claims against a non-signatory to a contract.  Plainly put, because Amazon Studios is not a party to any of the agreements at issue, Amazon's cases are simply inapplicable—and do not provide a viable basis for dismissing this claim against Amazon Studio.

> ### 2.    Dismissal of the Unjust Enrichment Claim Would Be Premature As Courts Permit Alternative Pleading at the Motion to Dismiss Stage

Amazon also argues that Plaintiffs' unjust enrichment claim is foreclosed by their breach of contract claims, and that "the written contracts cover the same subject matter as the alleged unjust enrichment" because the SPAs "expressly grant to Amazon the right to publicize those agreements."  Mot. at 7–8.  Even if this Court were to find that conduct involving Amazon Content and Amazon Studios' publicity of its relationship with Mr. Allen and Gravier are governed by the

MAA and/or SPAs (it is not),[13] a claim for unjust enrichment is proper where, as here, a party receives less than the full benefit of its bargain under those contracts.  *See Basso v. New York Univ.*, No. 16-CV-7295 (VM), 2017 WL 1019505, at *7 (S.D.N.Y. Feb. 24, 2017) (denying motion to dismiss unjust enrichment claims where plaintiff "did not receive the 'benefit of the[ir] bargain' and, as a result, [the defendant] was unjustly enriched").  It is for this reason that courts in this jurisdiction routinely permit pleading breach of contract and unjust enrichment in the alternative.

Put differently, the existence of contracts relevant to a dispute does not necessarily invalidate an unjust enrichment claim as an alternative theory and basis of recovery.  *See, e.g.*, *Dragushansky v. Nasser*, No. 12 CV 9240 TPG, 2013 WL 4647188, at *8 (S.D.N.Y. Aug. 29, 2013) ("Although a plaintiff cannot ultimately recover under a claim for breach of contract and unjust enrichment where a contract governs the subject matter at issue, a plaintiff can plead both causes of action in the alternative."); *Franze*, 2019 WL 1244293, at *3 (recognizing principle that party "could proceed under the quasi-contract theory of unjust enrichment in the alternative at the early stage of the proceeding until the ultimate viability of the contract claims could be determined on a complete factual record").

Here, Plaintiffs can hardly be said to have received the contracted-for benefits of its bargain with Amazon Content.  Importantly, Defendants courted Plaintiffs and then exploited that relationship in the press and otherwise, including by marketing a multi-picture production deal with Mr. Allen, which they went on to terminate less than one year later—well before the first film

---

[13]   *See, e.g.*, Compl. Ex. A ¶ 9(c) (granting Amazon *Content* publicity rights under the MAA but not Amazon *Studios*—as Amazon Studios is not a party to the MAA or the SPAs).

produced under the agreement was ever released in theaters.[14]   Plaintiffs would never have granted Amazon Content rights to "control [all] publicity," including "the marketing and publicity" of the MAA, had they known the continuous and long-term relationship that they contracted for could or would be severed in mere months.  Compl. Ex. A. ¶ 9(c).  Those rights were only granted with the expectation that Amazon Content would hold up its end of the bargain.  It did not.

Moreover, Plaintiffs seek distinct damages through the unjust enrichment claim.  For example, Plaintiffs seek to disgorge the proceeds, profits, and benefits that Amazon Content and Amazon Studios unjustly received from Plaintiffs, including the substantial increase in value to Amazon's film business, which was a direct result of its publicized relationship with Mr. Allen (and its ability to distribute prestigious films theatrically, as a hallmark of Amazon Studios' brand identity and business model, which was instrumental in distinguishing Amazon from its competitors).  *See, e.g.*, Compl. ¶¶ 4, 22, 108, and 111.

Thus, because Defendants' Motion ignores the weight of well-established authorities permitting alternative contract and unjust enrichment claims at the motion to dismiss stage, and because equity and good conscience cannot permit Defendants to retain what Plaintiffs seek to recover, Defendants' request to dismiss Plaintiffs' unjust enrichment claims is simply premature.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Amazon's partial motion to dismiss in its entirety, because Plaintiffs have adequately pled their

---

[14]   That "Plaintiffs do not allege *any* publicity in connection with the Allen Film Agreements" is a red herring.  Mot. at 9.  Indeed, Amazon benefitted from its association with Mr. Allen and Gravier beginning in December 2014 when the parties' inked the *Crisis in Six Scenes* deal.  Compl. ¶ 18.  The benefits of this affiliation continued flowing to Amazon from December 2014, and garnered Amazon even greater legitimacy and notoriety in February and July 2016 when the *Café Society* and *Wonder Wheel* agreements were announced (*id.* at ¶¶ 20–21), continuing into August 2017 and thereafter when the MAA was executed (*id.* at ¶ 24).

affirmative claims and are entitled to plead alternative theories of contract and quasi-contract liability at this pre-answer stage of the litigation.

Dated:  May 3, 2019
       New York, New York

Respectfully submitted,

QUINN EMANUEL URQUHART &
  SULLIVAN, LLP

*/s/ Julia M. Beskin*

Julia M. Beskin
juliabeskin@quinnemanuel.com
Jomaire A. Crawford
jomairecrawford@quinnemanuel.com
Donald J. Reinhard, II
donaldreinhard@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000 (tel.)

John B. Quinn
johnquinn@quinnemanuel.com
Gary E. Gans (*pro hac vice*)
garygans@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000 (tel.)

*Attorneys for Plaintiffs Gravier Productions, Inc.
and Woody Allen*