UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                      :     19cv1169(DLC)

GRAVIER PRODUCTIONS, INC. and WOODY   :
ALLEN,
                     Plaintiffs,   :      OPINION
                                        :    AND ORDER
          -v-                           :
                                          :
AMAZON CONTENT SERVICES, LLC and      :
AMAZON STUDIOS, LLC,
                                          :
                     Defendants.   :
                                          :
--------------------------------------- X
APPEARANCES:

For the plaintiffs:
Julia Marie Beskin
Jomaire Alicia Crawford
Donald J Reinhard
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue
22nd Floor
New York, NY 10010

John B. Quinn
Gary E. Gans
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Fugueroa Street
10th Floor
Los Angeles, CA 90017

For the defendants:
Robert N. Klieger
Moez M. Kaba
Michael Todisco
Hueston Hennigan LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014

DENISE COTE, District Judge:

     This case arises out of film financing and distribution

agreements between defendant Amazon Content Services, LLC

("Amazon Content") and plaintiffs Woody Allen ("Allen") and his film production company Gravier Productions, Inc. ("Gravier"). This Opinion resolves an April 3, 2019 partial motion to dismiss brought by Amazon Content and Amazon Studios, LLC ("Amazon Studios" and, collectively, "Amazon").  For the reasons that follow, that motion is granted.

## BACKGROUND

The following facts are taken from the complaint and documents attached to the complaint and are assumed to be true for the purposes of this motion.  Allen is a renowned and prolific filmmaker.  Gravier is Allen's film production company, founded by Allen in 2001.  Amazon began developing television shows in 2010, and in 2015 it began focusing on films.

Amazon and Allen began working together in December 2014. On July 22, 2016, Amazon Content entered into an agreement with Allen and Gravier to distribute Allen's film Wonder Wheel, which would become Amazon's first self-distributed film (the "Wonder Wheel Agreement").  On August 29, 2017, Amazon Content entered into a Multipicture Acquisition Agreement with Gravier (the "MAA").  Through the MAA, Amazon Content acquired certain rights in four films to be created by Allen and the option to acquire such rights in two additional films.

The first film subject to the agreement, for release in

2

2018, was <u>A Rainy Day in New York</u> ("<u>Rainy Day</u>").  The subsequent three films were referred to as the 2018 Allen Film, the 2019 Worldwide Allen Film, and the 2020 Worldwide Allen Film.  The MAA provided that each of the films licensed under the MAA "will be deemed to be licensed pursuant to a new agreement," and that those separate agreements would be "independent, standalone agreement[s]."  These agreements would be deemed to have the same form as the Wonder Wheel Agreement but with changes set forth in the MAA (the "Single Picture Agreements" or "SPAs").  Thus, the SPAs were not separately executed documents, but rather standalone contracts created by the MAA.

The MAA provided that, for each of the four films licensed through the agreement, Amazon Content would pay Gravier a minimum guaranty.  For the first film, <u>Rainy Day</u>, the minimum guarantee was set at $9,000,000, with 10% to be paid within 15 days of the execution of the MAA.  The MAA also provided that within 15 days of the agreement being signed, Amazon Content would pay Gravier a $10,000,000 advance.

The MAA contained a provision addressing publicity.  The parties agreed that Amazon Content would "control publicity" of the MAA and would have the exclusive right to issue all press releases regarding the MAA, subject to Allen's approval.  The MAA also acknowledged that "Allen is not contractually obligated to perform publicity services in connection with this

3

Agreement."

As set forth in the first paragraph of the MAA, "once a Picture is deemed licensed hereunder, any claim or damages with respect to a Picture may be brought only under and with respect to the applicable [SPA] under which the Picture is licensed as if the [SPA] were a standalone agreement."  A section titled "Limitation of Liability" provided as follows:

> Each party hereby waives all claims against the other party for any indirect, incidental, punitive, and consequential damages and [Gravier] hereby waives all claims to damages of any kind related to this agreement, whether in contract or tort and under any theory of liability, in excess of $15,000,000 . . . . Notwithstanding the foregoing, this provision will not be deemed to waive or limit any of either party's rights at law to enforce this agreement with respect to payments due to such party from the other party. . . . Each party waives any and all claims to damages of any kind under this agreement with respect to any pictures licensed pursuant to a picture agreement and will instead bring any such claims only under the applicable picture agreement as if the applicable picture agreement were a standalone agreement.

(Emphasis supplied.)  The MAA also provided that, in the event of a dispute under the MAA, Gravier's "sole remedy will be to pursue an action at law for money damages."

By June 2018, Allen and Gravier had completed production of Rainy Day.  At Amazon's request, the plaintiffs had agreed to postpone its release date until 2019.  But, on June 19, 2018, Amazon sent an email to representatives of Allen and Gravier terminating the MAA and the four SPAs.  It informed the

plaintiffs that "Amazon does not intend to distribute or otherwise exploit the Pictures in any domestic or international territories."  In subsequent email exchanges, counsel for Amazon explained that "Amazon's performance of the Agreement became impracticable as a result of supervening events, including renewed allegations against Mr. Allen, his own controversial comments, and the increasing refusal of top talent to work with or be associated with him in any way, all of which have frustrated the purpose of the Agreement."

Plaintiffs provided Amazon Content with a formal notice of breach on July 11, 2018.  On February 7, 2019, the plaintiffs filed this suit.  The complaint asserts eight causes of action: one cause of action for breach of each of the four SPAs, and the four additional causes of action at issue in this motion to dismiss.  They latter four are causes of action for (1) for breach of the MAA, (2) for breach of the implied covenant of good faith and fair dealing under the Rainy Day Agreement, (3) for breach of the implied covenant of good faith and fair dealing under the MAA, and (4) for unjust enrichment.  The first seven counts are asserted against Amazon Content alone and the eighth is asserted against both defendants.  On April 3, Amazon moved to dismiss the four counts.  That motion was fully submitted on May 17.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Richards v. Direct Energy Servs., LLC, 915 F.3d 88, 105 (2d Cir. 2018) (citation omitted).  A claim to relief is plausible when the factual allegations in a complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Kolbasyuk v. Capital Mgmt. Servs., LP, 918 F.3d 236, 239 (2d Cir. 2019) (citation omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017).  The plaintiff must plead enough facts to "nudge[] [his] claims across the line from conceivable to plausible . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted).  "A complaint is deemed to include any written instrument attached to it as an exhibit

6

or any statements or documents incorporated in it by reference."
Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016)
(citation omitted).  A court may also consider documents that
are "integral to the complaint."  Goel v. Bunge, Ltd., 820 F.3d
554, 559 (2d Cir. 2016).

Amazon moves to dismiss four of the claims asserted against
it: for breach of the MAA, for breach of the implied covenant of
good faith and fair dealing under the Rainy Day Agreement and
under the MAA, and for unjust enrichment.  Each is addressed in
turn.

Breach of the MAA

"To state a claim for breach of contract under New York
law, the complaint must allege: (i) the formation of a contract
between the parties; (ii) performance by the plaintiff; (iii)
failure of defendant to perform; and (iv) damages."  Nick's
Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d
Cir. 2017) (citation omitted).[1]

Under New York law, "a fundamental objective of contract
interpretation is to give effect to the expressed intention of
the parties."  In re MPM Silicones, 874 F.3d 787, 795 (2d Cir.
2017).  If the intent of the parties is clear from the four
corners of a contract, its interpretation is a matter of law for

---

[1] The MAA contains a choice of law provision in which the parties
agreed that it would be governed by New York law.

the court.  Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir. 2006).

"The initial inquiry is whether the contractual language, without reference to sources outside the text of the contract, is ambiguous."  In re MPM Silicones, 874 F.3d at 795.

> An ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business.

Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 466 (2d Cir. 2010) (citation omitted).  By contrast, a contract is unambiguous if its "language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion."  Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 69 (2d Cir. 2014).

"If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself."  Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004) (citation omitted).  But, "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible."  LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (citation

omitted).

The complaint fails to allege an actionable breach of the MAA.  The plaintiffs identify no breach of a contract that does not relate to an individual film.  The MAA provides that any claim for damages with respect to the films licensed through it may only be brought under each film's SPA.[2]  The plaintiffs have brought such claims in their first four causes of action and Amazon Content does not seek dismissal of those claims.  The MAA provides certain benefits to Amazon, such as an exclusive "first look" at Allen's subsequent literary and visual materials and the right to publicize the parties' agreements, but the plaintiffs do not allege that they suffered damages from the termination of these provisions.

The plaintiffs argue that the complaint contains allegations that Amazon improperly and unjustifiedly terminated the MAA, which, they assert, constitutes an independent breach of the MAA.  Even if Amazon's termination of the agreement could serve as an independent breach of the MAA, Gravier and Allen have not alleged any damages arising from this breach that are not encompassed by their claims that Amazon Content breached the

---

[2] In the MAA's limitations on liability section, Gravier agreed that it would only seek money damages under the agreement.  The only provision of the MAA that is not specific to one of the licensed films and that contemplates a payment by Amazon is the payment of an advance of $10,000,000.  The parties agree, however, that Amazon paid that advance in full.

four SPAs.  This includes the complaint's allegations that
Amazon's termination of the MAA has interfered with the
plaintiffs' ability to meet "certain obligations to outside
investors and foreign distributors, which Mr. Allen and Gravier
undertook in express reliance on Defendants' financial,
promotional, and distribution commitments."

The plaintiffs also assert that their claim for breach of
the MAA should not be dismissed because it is an alternative
theory of liability to their claims for breach of the SPAs.
While a plaintiff may allege alternative or inconsistent claims
in a pleading pursuant to Rule 8(d), Fed. R. Civ. P., here, all
of the alleged damages relate to the individual films licensed
through the MAA and the unambiguous terms of the MAA provide
that such damages may not be redressed through a claim for
breach of the MAA.  Therefore, the claim for breach of the MAA
is not an alternative theory, but one that is expressly
foreclosed by the MAA.

Breach of the Implied Covenant of Good Faith and Fair Dealing

"Under New York law, implicit in every contract is a
covenant of good faith and fair dealing which encompasses any
promises that a reasonable promisee would understand to be
included."  Spinelli v. Nat'l Football League, 903 F.3d 185, 205
(2d Cir. 2018) (citation omitted).  The implied covenant of good
faith and fair dealing embraces a pledge that "neither party to

a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract, or to violate the party's presumed intentions or reasonable expectations." Id. (citation omitted).

Nevertheless, "under New York law, the implied covenant of good faith and fair dealing cannot be used to impose an obligation that is inconsistent with express contractual terms." In Touch Concepts, Inc. v. Cellco P'ship, 788 F.3d 98, 102 (2d Cir. 2015). A claim for breach of the implied covenant of good faith and fair dealing may also be dismissed "because of the lack of actual damages." RXR WWP Owner LLC v. WWP Sponsor, LLC, 17 N.Y.S.3d 698, 700 (1st Dep't 2015).

"[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013). "[P]arties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Spinelli, 903 F.3d at 206 (citation omitted). "[B]ut where . . . there is a dispute over the meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing both types of claims in the alternative." Id.

Amazon moves to dismiss the plaintiffs' causes of action

11

for breach of the implied covenant of good faith and fair dealing under both the MAA and the SPA for Rainy Day.  Both causes of action assert claims that are entirely duplicative of the plaintiffs' breach of contract claims and must be dismissed.

The plaintiffs identify three implied promises under the MAA that they allege Amazon breached: (1) that neither party would repudiate the MAA at least until all obligations under the SPAs were complete, (2) that the parties would abide by the terms of the MAA and not repudiate it regardless of a legal right to do so, and (3) that Amazon would license and finance at least four films and maintain a continuous, long-term relationship that could yield additional film collaborations. None of these promises are, in fact, distinct from the contractual obligations laid out in the parties' contracts.  The plaintiffs essentially claim that Amazon is bound by an implied promise to abide by the terms of the MAA.  Failure to do so would, if the other elements of a breach of contract claim are met, be cognizable as a breach of the MAA.  As such, the claim for breach of the implied covenant under the MAA is redundant of the plaintiffs' breach of contract claim.[3]

---

[3] This conclusion does not change based on the dismissal of the cause of action for breach of the MAA.  As discussed above, the plaintiffs identify no damages recoverable under the MAA itself. Allegations that Amazon breached the implied covenant under the MAA similarly do not allege damages independent of those the plaintiffs seek under the SPAs.

The claim for breach of the implied covenant of good faith and fair dealing under the Rainy Day Agreement fares no better. The plaintiffs argue that Amazon, by permitting the plaintiffs to expend money and resources to complete Rainy Day and by asking the plaintiffs to postpone its release until 2019, while not intending to pay the film's minimum guarantee or distribute the film, breached the implied covenant of good faith and fair dealing under that film's SPA. These assertions do not give rise to an independent claim for breach of the implied covenant of good faith and fair dealing. The plaintiffs have not identified an implied promise that does not duplicate Amazon's obligations under the Rainy Day Agreement.

Gravier and Amazon again argue that their causes of action for breach of the implied covenant of good faith and fair dealing should survive as alternative pleadings. Not so. The parties do not dispute the validity of the MAA or the Rainy Day Agreement and the plaintiffs do not identify any disagreement over the meaning of terms in those contracts that could render their implied covenant claims non-duplicative. These claims are entirely redundant of the plaintiffs' claims for breach of contract and therefore must be dismissed.

Unjust Enrichment

To state a claim for unjust enrichment in New York, a plaintiff must show that "(1) defendant was enriched (2) at

13

plaintiff's expense, and (3) that it is against equity and good conscience to permit defendant to retain what is sought to be recovered." Kaplan v. Reed Smith LLP, 919 F.3d 154, 160 (2d Cir. 2019) (citation omitted).  The theory of unjust enrichment, however, "lies as a quasi-contract claim.  It is an obligation the law creates in the absence of any agreement." Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted) (emphasis in original).  As the New York Court of Appeals has explained:

> [U]njust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.  Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.  An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012) (citation omitted).

Thus, "[i]t is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." Beth Israel Med. Ctr., 448 F.3d at 587 (citation omitted).  "[T]he existence of an express

contract governing the subject matter of [a claim] also bars any quasi-contractual claims against a third-party nonsignatory to the valid and enforceable contract." 22 Gramercy Park, LLC v. Michael Haverland Architect, P.C., 96 N.Y.S.3d 196, 198 (1st Dep't 2019) (citation omitted); see also Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc., No. 11cv5832 (AJN), 2012 WL 3542196, at *10 (S.D.N.Y. Aug. 15, 2012) (collecting cases).

The obligations underlying the plaintiffs' claim for unjust enrichment against Amazon are governed by contracts between the plaintiffs and Amazon Content. The plaintiffs assert that Amazon was unjustly enriched by Amazon's extensive publicity of the MAA. Such publicity is, however, expressly covered by the terms of the MAA, which grants Amazon Content the exclusive right to publicize the parties' agreement.

The plaintiffs do not dispute that the allegations giving rise to their unjust enrichment claim are governed by the express terms of the MAA. Instead, they argue that their unjust enrichment claim against Amazon Studios should survive because Amazon Studios was not a party to either the MAA or the SPAs. Under New York law, a claim for unjust enrichment may not be asserted even against a third-party where the subject matter of that claim is governed by contract. See 22 Gramercy Park, 96 N.Y.S.3d 196. The question, therefore, is whether the alleged

15

enrichment of Amazon Studios' film business due to Amazon's publicity of its relationship with Allen and Gravier is governed by the MAA.  It is.  The MAA gave exclusive rights to publicize the parties' agreement to Amazon Content.  To the extent any related Amazon entity benefitted by Amazon Content exercising that right to publicity, the plaintiffs' recourse is through a suit against Amazon Content for breach of the MAA.  As discussed above, that claim has been dismissed.

The plaintiffs also argue that their unjust enrichment claim should survive at this stage of the litigation as a permissible alternative claim to their contract claims. "[W]here there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, plaintiff may proceed upon a theory of quantum meruit." IIG Capital LLC v. Archipelago, L.L.C., 829 N.Y.S.2d 10, 14 (1st Dep't 2007).  Where, as here, however, the parties agree that a contract governs their dispute, a plaintiff may not continue to litigate a duplicative unjust enrichment claim.  The allegations in the complaint make out a straightforward breach of contract case -- Allen and Gravier assert that they have performed their obligations under the parties' agreements and Amazon Content failed to hold up its end of the bargain.

## CONCLUSION

Amazon's April 3, 2019 partial motion to dismiss is granted.  The plaintiffs' fifth, sixth, seventh, and eighth causes of action are dismissed, including the sole claim against Amazon Studios.

Dated:    New York, New York
          July 31, 2019

                                  _____
                                          DENISE COTE
                                  United States District Judge