J7O8GRAC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GRAVIER PRODUCTIONS, INC.,
et al.,

                Plaintiffs,

           v.                          19 Cv. 1169 (DLC)

AMAZON CONTENT SERVICES, LLC,
et al.,

                Defendants.

------------------------------x
                                       New York, N.Y.
                                       July 24, 2019
                                       3:00 p.m.
Before:

                    HON. DENISE L. COTE,

                                       District Judge

                          APPEARANCES

QUINN EMANUEL URQUHART & SULLIVAN LLP
     Attorneys for Plaintiffs
BY:  GARY E. GANS
     JOMAIRIE A. CRAWFORD

HUESTON HENNIGAN LLP
     Attorneys for Defendants
BY:  ROBERT N. KLIEGER
```

J7O8GRAC

1              (In chambers; phone conference)

2              THE COURT:  Good afternoon, counsel.

3              I have you on the speakerphone because a court
4    reporter and my law clerk are with me.  I will briefly take
5    appearances.

6              For the plaintiffs.

7              MR. GANS:  Gary Gans and Jomairie Crawford.

8              THE COURT:  Thank you.

9              For the defendants.

10             MR. KLIEGER:  You have Robert Klieger for defendants.

11             THE COURT:  Thank you.

12             I have letters from counsel of July 22 and July 23.
13   Essentially, two issues are being raised by plaintiffs' counsel
14   with respect to the document production made by Amazon.  Since
15   the second letter is defendants' response, I will hear from
16   you, Mr. Gans.

17             MR. GANS:  Thank you, your Honor.  If it's OK with the
18   Court, to split the argument, Ms. Crawford would address the
19   second issue of the organizational charts.

20             THE COURT:  Absolutely.

21             MR. GANS:  Let me talk about the first issue, which is
22   the date range for the collection and production of documents.
23   Plaintiffs used the date of January 1, 2014 to start its
24   collection production, and we believe Amazon should do the
25   same.  The objection and the only argument that Amazon has

raised in its letter brief is relevance.  So let me talk about the two main areas of relevance.

First is the negotiations and communications regarding contracts for two motion pictures called *Wonder Wheel* and *Cafe Society*, and these were negotiated and discussed in 2014 and 2015, before the date range that Amazon has been using.

The reason that they are relevant and important is that the single picture agreements, which are in issue here, consist of the same form as the *Wonder Wheel* agreement.  The multipicture acquisition agreement says, "Each picture licensed hereunder will be deemed to be licensed pursuant to a new agreement which is on the same form as the *Wonder Wheel* agreement, but with the changes set forth below."  And, in turn, the *Wonder Wheel* agreement adopted terms from the *Cafe Society* agreement, including one of the important provisions here, that's a limitation of liability provision.

Under the *Trilegiant* case, anything that may further the interpretation of a contractual term, including other contracts, is discoverable.  For example, if Amazon proposed a term about termination in the *Wonder Wheel* agreement, and it was rejected, that would be relevant evidence that such a term could not be implied in the single picture agreements.

THE COURT:  Mr. Gans, could I interrupt you?  I am sorry to do that, but could I interrupt you for a moment?

MR. GANS:  Yes.

1         THE COURT: I don't understand that there is any
2 dispute of importance in this case with respect to the terms of
3 the agreements. Are you suggesting that there is a dispute of
4 importance to this case with respect to how to construe the
5 term on limitation of liability?
6         MR. GANS: Yes. I think there's at least three
7 disputed terms in the single picture agreements.
8         The first is the right to terminate. We believe that
9 there is no right to terminate. Amazon apparently believes
10 they do have a right to terminate. So that's a disputed term.
11         Second is, as the Court mentioned, the limitation of
12 liability clause. We have different constructions of how that
13 clause works, and whether even applies, in the context of
14 Amazon's repudiation of the contract.
15         And the third area, which I think is critical, is that
16 we don't have Amazon's answer to the complaint yet, but they
17 have indicated that they are going to raise an affirmative
18 defense based on the implied covenant of good faith and fair
19 dealing. We don't know at this point what terms they are
20 trying to imply, but if they are trying to imply some term in
21 the single picture agreements with respect to Mr. Allen's
22 conduct, which is an issue, then we are going to have a dispute
23 about that. And all of this relates back to communications in
24 2014 which I think, if I can get into the second basis for
25 relevance, they are really interrelated.

1   The second area of relevance is Amazon's basis for
2   termination.  We believe the termination was without any legal
3   basis and was in bad faith.  The bad faith goes to the
4   enforceability of the limitation of liability clause, which the
5   Court raised, among other things.
6   In its letter brief yesterday, counsel wrote, "As
7   Amazon has repeatedly made clear, it terminated its
8   relationship with plaintiffs based on Mr. Allen's public
9   statements in and after -- in and after is emphasized --
10  October 2017, in relation to the Me Too movement, and the
11  resulting refusal of talent to work with him, and not because
12  of the old allegations of sexual misconduct made against him."
13  But that's not what Amazon said when it terminated.
14  What counsel wrote at that time is much different.  What he
15  said then was -- let me just get that -- "with respect to the
16  basis for termination, and as discussed in Amazon's prior
17  communications with Ms. Aronson and Adam Stern, who are Mr.
18  Allen's managers, Amazon's performance to the agreement became
19  impracticable as a result of supervening events, including
20  renewed allegations against Mr. Allen, his own controversial
21  comments," etc.
22  So these renewed allegations were the basis for
23  termination despite the fact that counsel wants to disassociate
24  himself with that now on a discovery motion.
25  THE COURT:  And when were those renewed allegations,

1    as you understand it, Mr. Gans?

2            MR. GANS:  2014.

3            So we believe we are entitled to find out what the
4    real basis was for terminating the contract.  Amazon said
5    before that it was based on these renewed allegations in part,
6    and we think we are entitled to know what they knew about the
7    renewed allegations in 2014 and 2015, and with respect to,
8    among other things, contract interpretation.  Because if they
9    knew of these renewed allegations in 2014, or if they knew
10   about Mr. Allen's propensity to say whatever is on his mind to
11   the press, and they decided, well, with knowledge of these
12   things we are going to go ahead and make these contracts in a
13   provision protecting us against what he might say or whether
14   the allegations are renewed again, we think that's certainly
15   relevant to interpretation of the contract and the basis for
16   termination.

17           Now, basically, they are seeking to imply into the
18   contract terms concerning Mr. Allen's public statements, and if
19   they knew types of statements he has made in the past, and
20   intentionally decided to proceed anyway and accept that risk,
21   that would be relevant to implying a term into the contract.

22           It's also important, as I mentioned before, that we
23   don't yet have the answer to the complaint, and there may be
24   other affirmative defenses that relate to communications in
25   2014 and 2015.  And it's also important that there is no claim

1 that this is overly burdensome or problematic for Amazon to
2 apply the same search terms they applied before, just go back
3 to the January 2014 date.  There is no issue of
4 confidentiality.  We have a protective order.  There is just no
5 basis for them not to search for responsive documents.  If they
6 are not relevant, then they are not relevant, but they are
7 certainly discoverable.
8         THE COURT:  OK.  Mr. Klieger.
9         MR. KLIEGER:  Thank you.
10         I think the main issue, just to be very clear, is that
11 the basis for Amazon's termination, from the e-mail that Mr.
12 Gans read from through the present, has always been with
13 respect to Mr. Allen's statements and conduct after October of
14 2017, and the phrase that Mr. Gans read from my e-mail that's
15 attached to the complaint, which is the critical phrase, is "as
16 a result of supervening events."
17         So everything, from the moment of the termination,
18 through the 26(f) statement, through the partial motion to
19 dismiss, there were discovery responses through today,
20 everything is about what Mr. Allen said and the reactions to
21 that in and after 2017.  To the extent that plaintiffs want us
22 to stipulate that it's solely based on things after 2017, I
23 have no issue with that.  To the extent they want us to
24 stipulate that we were aware of the things that have been
25 alleged against Mr. Allen prior to entering into the

multipicture acquisition agreement and the SPAs, I have no issue with that either. I don't think anything there is disputed. And it's certainly not the basis for the termination.

        THE COURT: So, counsel, I think that this is a discussion that really doesn't implicate the agreements and the terms of the agreements. In preparation for this conference, I obviously read your letters, but beyond that, I looked at the transcript for our initial conference on April 12 and the joint Rule 26(f) report that the parties submitted to me. There is nothing in this dispute that suggests that there is a disagreement about what contract terms mean as opposed to what the effect of those contract terms might have on the merits of the claims or defenses in this case.

        So we are not going back and searching two and a half years of e-mails and other digital information to get the period of time covering two other contracts before those that are in dispute here. The MAA, which is the first agreement that's in dispute here, was executed in August of 2017, and so providing discovery that goes as far as back as May of 2016 is more than sufficient to capture the parties' negotiations and understandings insofar as it is relevant to the contract disputes here or the affirmative defenses.

        Obviously, whatever decision that Amazon made to terminate the agreement has to arise out of events after they

J7O8GRAC

1  entered into the agreement.  They entered into the agreement in
2  August of 2017.  They have been taking the position that events
3  in October of 2017 caused it to change its mind, whatever.  The
4  parties will explore that.  But we don't need to go back
5  seeking additional discovery back to 2014 on that ground.
6       So let's turn to the organizational charts issue.
7       Ms. Crawford.
8       MS. CRAWFORD:  Yes, your Honor.
9       The second request that we have raised by letter
10 motion is that Amazon be ordered to search for and produce
11 organizational charts from the relevant time period for both
12 Amazon Content and Amazon Studios.  The documents are
13 relevant --
14      THE COURT:  I am sorry.  Ms. Crawford, are you on a
15 landline?  The court reporter is having trouble understanding
16 what you are saying.
17      MS. CRAWFORD:  Is this better now?
18      THE COURT:  Much better.
19      MS. CRAWFORD:  I apologize, your Honor.
20      THE COURT:  Thank you.
21      MS. CRAWFORD:  Despite Amazon's refusal to produce
22 organizational charts from either defendant entity, we
23 articulated, both during the meet-and-confer process and in our
24 letter motion to the Court, that such documents are relevant
25 under Federal Rule of Civil Procedure 26(d) and proportional to

the needs of the case for two primary reasons.

First, if organizational charts in the relevant time period exist, they will prove useful in understanding the flow of information within the Amazon organization, as well as key custodians and witnesses.  I can't underscore the importance of this first point enough, because since the start of discovery in this case, organizational charts have become increasingly relevant.

One, Amazon proposed 31 document custodians in this case, some of whom are secretaries to other custodians, but Amazon provided little to no contextual information regarding the reporting lines and relationships as between those 31 proposed custodians.

The second issue is that when Amazon made its first and second document production, we pointed out that there was a glaring deficiency of data for certain of these custodians, and the only way for plaintiffs to assess the paucity of documents and how those deficiencies might be corrected requires us to look at reporting lines within the Amazon organization and who might be suitable for placement custodian or the individuals whose documents were not produced or whose data was not responsive to the search protocol that was agreed upon.

The other issue is that we know based on discovery to date that Amazon failed to retain documents for at least one employee, which may also require the identification of a

1  substitute document custodian within that employee's reporting
2  line or within that employee's department.
3        Finally, we are entitled to evaluate the discovery
4  that's been provided by Amazon to date in the form of
5  interrogatory responses and initial disclosures, particularly
6  where Amazon's initial disclosures only identify a single
7  Amazon employee as, quote, likely to have discoverable
8  information.
9        So it's for this reason, your Honor, that having
10 organizational charts would be useful in assessing the flow of
11 information within the organization and assessing the key
12 custodians that have been proposed and the individuals who have
13 been disclosed in Amazon's discovery disclosures.
14       The second reason why these organizational charts are
15 relevant relates to Federal Rule of Civil Procedure 30, which,
16 as you know, places a ten deposition cap on the number of
17 depositions that either may take in this action as a matter of
18 right.  As a result of this ten deposition limit, under which
19 plaintiffs are operating, we must be judicious with the
20 employees we designate and we depose in this action, and that,
21 I think, exercise would be furthered by having organizational
22 charts that list out the different reporting lines and allows
23 us to make educated decisions as it relates to the deponents
24 that are worth deposing within each of these departments or
25 reporting lines.

1          Based on the letter that was sent yesterday, I
2    understand Amazon's position to be that these documents are not
3    relevant, and if they are relevant, we could glean similar
4    information from other sources, i.e., the other documents that
5    Amazon is producing.  But I think, for the reasons that are
6    laid out in our letter, that some individuals that can be
7    identified from the face of other documents that Amazon has or
8    will produce doesn't address the existing reporting lines and
9    the importance of understanding those reporting lines,
10   including for individuals who may not appear on the face of the
11   documents they produce but nevertheless may have relevant
12   involvement in, for example, the decision to terminate the
13   agreement at issue.
14          This point is particularly important where, again,
15   documents for at least one custodian were not preserved, and
16   where, as a result, such information regarding involvement
17   can't be gleaned from the face of documents that no longer
18   exist and will not be produced to plaintiff.
19          So in conclusion, we believe that we have met our
20   burden of proving that the requested discovery is relevant
21   under the federal rules and proportional to the needs of this
22   case.  Amazon has not and cannot demonstrate that any burden
23   exists and that any such burden outweighs the benefit of the
24   requested discovery, particularly where Amazon has refused to
25   determine if these charts even exist in the first instance.

1   Because Amazon has not satisfied its obligation of showing that
2   the requested discovery fails the proportionality calculation
3   mandated by the federal rule, plaintiffs respectfully request
4   that those documents be produced if they exist.
5        Thank you, your Honor.
6        THE COURT:  Ms. Crawford, may I ask, did you pose an
7   interrogatory asking who had made the decision or who
8   participated in the decision to terminate the contracts?
9        MS. CRAWFORD:  We have not propounded interrogatories
10  along those lines, your Honor, in part because the information
11  that we would be gleaning from organizational charts is not
12  limited to the individuals who were involved in the decision of
13  whether or not to terminate the contract.
14       THE COURT:  Well, I don't know how familiar you are
15  with the Southern District local rules, but initial
16  interrogatories are the preferred mode here for identifying
17  witnesses with helpful information in a case.  And that's
18  usually the most efficient way in litigation to go right to the
19  heart of the matter, which people have information of most
20  relevance to the critical issues here.  So I commend you to our
21  local rules and to the use of interrogatories.
22       Let me ask you a second question, Ms. Crawford.  Are
23  you telling me that defense counsel has refused to identify for
24  individuals who appear on e-mails that have been produced, for
25  instance, what their roles are in the company, what their

1  titles are or reporting lines?
2          MS. CRAWFORD:  We can certainly explore, with your
3  Honor's guidance, we can certainly explore that with defense
4  counsel.  At this point our conversation has been centered on
5  whether in the first instance Amazon would be willing to search
6  for these organizational charts and produce them to plaintiffs,
7  if they exist, because they were unwilling to -- sorry, your
8  Honor.
9          THE COURT:  That's fine.
10         Mr. Klieger, are you personally willing, with Amazon's
11 assistance, to help identify reporting lines for people who
12 show up on critical e-mails?
13         MR. KLIEGER:  Absolutely.
14         THE COURT:  Good.  So I am not going to require the
15 organizational charts to be produced.  There are many reasons
16 why a company doesn't want to produce those, much less they may
17 not be very directly relevant with respect to an individual
18 decision like the kind of discrete decision at issue here.  So
19 I think interrogatories that are tailored to the precise issues
20 here in this litigation will be a far more efficient way of
21 taking discovery.
22         Good luck, counsel, and thank you so much.
23         MR. GANS:  Your Honor, can I just ask for a
24 clarification on the first issue?
25         THE COURT:  Who is speaking?

1        MR. GANS:  This is Gary Gans.

2        THE COURT:  Yes.

3        MR. GANS:  As I mentioned, we don't yet have an

4   answer.  We don't know the affirmative defenses Amazon is going

5   to raise, and, in particular, we don't know what terms they are

6   going to seek to imply into the MAA and the single picture

7   agreements.  So I would like to ask that the denial of our

8   motion be without prejudice, that if their affirmative defenses

9   or when we find out what terms they want to imply into the

10  contract do bear on communications going back to 2015 to 2014,

11  we can renew our motion.

12       THE COURT:  Well, of course.  And this goes for both

13  sides.  If at any time, as discovery unfolds, something becomes

14  prominent in your discussions with each other that needs

15  resolution by the Court, I am happy to assist.

16       Thanks so much, counsel.

17       (Adjourned)