UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRAVIER PRODUCTIONS, INC., and WOODY ALLEN, <br><br> Plaintiffs, <br><br> – against – <br><br> AMAZON CONTENT SERVICES, LLC, and AMAZON STUDIOS, LLC, <br><br> Defendants. | Case No. 1:19-cv-01169 (DLC) |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANT AMAZON CONTENT SERVICES, LLC'S FIRST AND FOURTH AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND.....................................................................................................2

I.  Amazon's Termination of the MAA and the SPAs ..........................................................2

II.  Procedural History .......................................................................................................3

III.  Amazon's Affirmative Defenses....................................................................................4

LEGAL STANDARD.................................................................................................................5

ARGUMENT ..............................................................................................................................7

I.  Amazon's Implied Covenant Defense Should be Stricken.................................................7

    A.  The First Affirmative Defense Is Not Plausible ......................................................9

        1.  The "Context" Here Does Not Require a Relaxed Plausibility
Standard ..............................................................................................9

        2.  The First Affirmative Defense Fails to Satisfy the First Factor of
the *GEOMC* test ..................................................................................10

    B.  There Is No Legally Sufficient Basis Supporting the First Affirmative
Defense ........................................................................................................16

    C.  The First Affirmative Defense Is Prejudicial to Plaintiffs .....................................18

    D.  Amazon's First Affirmative Defense Must be Stricken .......................................18

II.  Amazon's "Acts of Others" Affirmative Defense Should Be Stricken ...........................19

CONCLUSION.........................................................................................................................21

## TABLE OF AUTHORITIES

**Page**

### Cases

*1357 Tarrytown Rd. Auto, LLC v. Granite Properties, LLC*,
    142 A.D.3d 976 (2nd Dep't 2016) ................................................................... 14

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
    98 N.Y.2d 144 (2002) .......................................................................... 8, 19

*A + E Television Networks, LLC v. Wish Factory Inc.*,
    2016 WL 8136110 (S.D.N.Y. Mar. 11, 2016) ............................................... 17

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
    531 F. Supp. 2d 620 (S.D.N.Y. 2008) ............................................................ 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 6

*Brandt v. Godwin*,
    3 N.Y.S. 807 (City Ct. 1889) .................................................................... 17

*Cartier Int'l AG v. Motion in Time, Inc.*,
    2013 WL 1386975 (S.D.N.Y. Apr. 5, 2013) .................................... 8, 11, 19,20

*Coach, Inc. v. Kmart Corps.*,
    756 F. Supp. 2d 421 (S.D.N.Y. 2010) .......................................... 9, 10, 16, 18

*Cohen v. Elephant Wireless, Inc.*,
    2004 WL 1872421 (S.D.N.Y. Aug. 19, 2004) .............................................. 14

*Cty. Vanlines Inc. v. Experian Info. Sols., Inc.*,
    205 F.R.D. 148 (S.D.N.Y. 2002) ................................................................. 5

*De Pasquale v. Williams-Bauer Corp.*
    151 F.2d 578 (2d Cir. 1945) ...................................................................... 11

*Employers Ins. Co. of Wausau v. Crouse-Cmty. Ctr., Inc.*,
    489 F. Supp. 2d 176, 179 (N.D.N.Y. 2007) .................................................. 5

*FSP, Inc. v. Societe Generale*,
    2005 WL 475986 (S.D.N.Y. Feb. 28, 2005) .................................................. 9

*GEOMC Co. v. Calmare Therapeutics Inc.*,
    918 F.3d 92 (2d Cir. 2019) .................................................................. passim

*Greenfield v. Philles Records, Inc.*,
   98 N.Y.2d 562 (2002) ........................................................................ 16

*Harmon v. Adirondack Cmty. Coll.*,
   12 A.D.3d 746 (3rd Dep't 2004) ............................................................ 8

*In re Beacon Assocs. Litig.*,
   2011 WL 3586129 (S.D.N.Y. Aug. 11, 2011) ........................................ 8, 19

*In re Elec. Books Antitrust Litig.*,
    859 F. Supp. 2d 671 (S.D.N.Y. 2012) ................................................... 6

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   289 F. Supp. 2d 429 (S.D.N.Y. 2003) .................................................. 6

*In Touch Concepts, Inc. v. Cellco P'ship*,
   788 F.3d 98 (2d Cir. 2015) .................................................................. 8

*Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*,
   2013 WL 417406 (S.D.N.Y. Feb. 4, 2013) ............................................. 6

*Marine Midland Bank, N.A. v. Yoruk*,
   242 A.D.2d 932 (4th Dep't 1997) ........................................................ 13

*Medcalf v. Thompson Hine LLP*,
   84 F. Supp. 3d 313 (S.D.N.Y. 2015) .................................................... 8

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007) ................................................................ 7

*Michaan v. Gazebo Horticultural, Inc.*,
   117 A.D.3d 692 (2nd Dep't 2014) ........................................................ 12

*Murphy v. American Home Products*,
   58 N.Y.2d 293 (1983) ........................................................................ 15

*Nat'l Credit Union Admin. Bd.*,
   2014 WL 1673351 ................................................................. 16, 18, 19

*New London Assocs., LLC v. Kinetic Soc. LLC*,
   2019 WL 2918163 (S.D.N.Y. July 8, 2019) (Cote, J.) ........................ 1, 6, 7, 9

*Obabueki v. Int'l Bus. Machs. Corp.*,
   145 F.Supp.2d 371 (S.D.N.Y. 2001) ..................................................... 12

*Rockland Dev. Assocs. v. Richlou Auto Body, Inc.*,
   173 A.D.2d 690 (2nd Dep't 1991) ........................................................ 17

iii

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)..................................................................... 6

*S.E.C. v. KPMG LLP*,
    2003 WL 21976733 (S.D.N.Y. Aug. 20, 2003)...................................... 15, 18

*S.E.C. v. McCaskey*,
    56 F. Supp. 2d 323 (S.D.N.Y. 1999)...................................................... 7

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)..................................................................... 6

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir. 2006)..................................................................... 8

*Tracy v. NVR, Inc.*,
    2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009),
    *report and recommendation adopted as modified*,
    667 F. Supp. 2d 244 (W.D.N.Y. 2009) .................................................. 9

*United States v. Oswego Falls Corp.*,
    113 F.2d 322 (2d Cir. 1940).................................................................... 10

*United States v. Winstar Corp.*,
    518 U.S. 839 (1996)................................................................................ 16

*Vision Entm't Worldwide, LLC v. Mary Jane Prods., Inc.*,
    2014 WL 5369776 (S.D.N.Y. Oct. 17, 2014) ...................................... 19

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015).................................................... 6

## Statutes

Fed. R. Civ. P. 12(f)........................................................................................ 5

Fed. R. Civ. P. 8(c) ........................................................................................ 5

Fed. R. Evid. 201(b)(2), (d) ........................................................................... 5

## Other Authorities

Daphne Merkin, *Introducing Soon-Yi Previn*, Vulture (Sept. 16, 2018) ...................................... 11

*Los 5 mejores momentos de la entrevista de*
    *Jorge Lanta a Woody Allen*, Infobae, (June 4, 2018) ........................................ 13

Plaintiffs Gravier Productions, Inc. ("Gravier") and Woody Allen (together with Gravier, "Plaintiffs") respectfully submit this memorandum of law in support of their motion to strike Defendant Amazon Content Services, LLC's ("Amazon") First and Fourth Affirmative Defenses pursuant to Federal Rule of Civil Procedure 12(f).

## PRELIMINARY STATEMENT

This is a straightforward breach of contract case in which Amazon has no defense to liability. Amazon repudiated and terminated—without any contractual or other legal basis—its obligations under a master multi-picture acquisition agreement ("MAA") and four single picture license agreements thereunder ("SPAs") between the parties.  Having no justification for its actions, Amazon has raised a number of baseless affirmative defenses without making *any* allegations which factually or legally support them.  Specifically, Amazon's First Affirmative Defense alleges that Plaintiffs' claims are barred because Plaintiffs purportedly breached an undescribed "covenant of good faith and fair dealing that is implied in the SPAs," sometime "in and after October 2017," by making unspecified "statements and conduct" having no identified relationship with the terms of the MAA or the SPAs.  Amazon's Fourth Affirmative Defense merely alleges that the claims are barred because Plaintiffs' damages "resulted from the acts or omissions of Plaintiffs or other persons or entities over which Amazon had no control."  Amazon fails to identify *any* statement, conduct, act, or omission to support either defense and, thus, fails to give notice to Plaintiffs or the Court as to the nature of these defenses or how they could legally bar Plaintiffs' claims.

The First and Fourth Affirmative Defenses must be stricken because they are "insufficient" under the  three part test for Rule 12(f) motions to strike an affirmative defense recently endorsed by the Second Circuit in *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95–96 (2d Cir. 2019), and applied by this Court in *New London Assocs., LLC v. Kinetic Soc. LLC*,  2019 WL 2918163, at *1 (S.D.N.Y. July 8, 2019) (Cote, J.).  Neither affirmative defense includes any factual allegations

1

which might render it "plausible," nor is there any legal basis alleged that could preclude Plaintiffs from recovering for breach of contract.  Moreover, continuing to litigate and engage in discovery concerning Amazon's affirmative defenses would be prejudicial to Plaintiffs, particularly given the highly sensitive nature of the discovery in this action.

Amazon's First and Fourth Affirmative Defenses are patently "insufficient" under Rule 12(f) and, therefore, should be stricken.

## FACTUAL BACKGROUND

### I.    Amazon's Termination of the MAA and the SPAs[1]

Woody Allen is a critically acclaimed filmmaker who has written and directed numerous iconic and award-winning motion pictures over a 50 year career. Ans. ¶¶ 13-16.  Many of his films were produced by Mr. Allen's production company, Gravier.  *Id.* ¶ 16.  In 2015, Amazon, along with Amazon Studios, LLC, launched an effort to "expand [its] production efforts into feature films" by entering into a contract with Plaintiffs to distribute Mr. Allen's film, *Café Society*.  *Id.* ¶¶ 18-20. Following the success of *Café Society*, Amazon and Plaintiffs entered into a second contract for Mr. Allen's film, *Wonder Wheel*, which became the first motion picture self-distributed by Amazon.  *Id.* ¶ 21.

On August 29, 2017, Plaintiffs and Amazon again agreed to extend their relationship by entering into a four picture transaction called the Multipicture Acquisition Agreement (*i.e.*, the MAA).  *Id.* ¶ 24.  Pursuant to the MAA, Gravier "license[d] two Picture[s]" to Amazon Content for domestic release in 2018 and 2019 (the "2017 Allen Film," a/k/a *Rainy Day in New York*, and the "Untitled 2018 Allen Film," respectively),  and two Pictures for worldwide release in 2019 and 2020

---

[1]  Amazon's Answer to Plaintiffs' Complaint (Dkt. 52) "admits" or otherwise fails to deny the following factual allegations of the Complaint, and therefore are appropriately considered on this motion to strike.

(the "Untitled 2019 Allen Film" and "Untitled 2020 Allen Film," respectively).  *Id.* ¶ 26.  Each of the four pictures was "deemed to be licensed" pursuant to "an independent, standalone agreement," referred to as a "Single Picture Agreement" (*i.e.,* the SPAs) on the terms set forth in the Wonder Wheel contract as modified by the MAA.  *Id.* ¶¶ 26-27.

Thereafter, Plaintiffs undertook substantial efforts to produce *A Rainy Day in New York* consistent with their obligations under the SPA for that film, spending approximately $19 million to do so.  *Id.* ¶¶ 5, 36, 39.  However, on June 19, 2018, after the film had been completed, Amazon emailed Plaintiffs' representatives purporting to terminate the MAA and the SPAs (the "Termination Notice").  *Id.* ¶ 39.  In the Termination Notice, Amazon provided "notice that Amazon is terminating the Agreement with respect to each of the Pictures" and informed Plaintiffs that "Amazon does not intend to distribute or otherwise exploit the Pictures in any domestic or international territories."  *Id.* Amazon did not provide any factual or legal basis for the Termination Notice.  *Id.*  In subsequent email correspondence, Amazon's counsel vaguely asserted that its performance of the MAA became "impracticable" because of "supervening events, including renewed allegations against Mr. Allen, his own controversial comments, and the increasing refusal of top talent to work with or be associated with him in any way, all of which have frustrated the purpose of the Agreement."  *Id.* ¶ 40.  Significantly, in its Answer, Amazon abandoned its impracticability and frustration of purpose defenses, asserting the affirmative defenses at issue instead.

## II.   Procedural History

On February 7, 2019, Plaintiffs filed the instant Complaint.  Dkt. 1.  On April 3, 2019, Amazon filed a partial motion to dismiss four of Plaintiffs' eight claims for relief.  Dkt. 25; *see also* Dkt. 39 (Plaintiffs' opposition); Dkt. 41 (Amazon's reply).

While the motion to dismiss was pending, the parties engaged in discovery and motion practice concerning a discovery dispute.  *See* Dkt. 44 (Plaintiffs' letter motion to compel); Dkt. 46

(Amazon's letter opposition).   In Amazon's opposition to Plaintiffs' motion to compel the production of certain documents, Amazon represented to the Court that, despite the rationale Amazon had previously offered to  justify its termination of the contracts, Amazon did not terminate the MAA and SPAs based on reasons related to Mr. Allen's "controversial history" or the "old" allegations of sexual misconduct made against him.  Dkt. 46.  Amazon further conceded that its "knowledge of that past controversy before entering into the MAA and SPAs" is "uncontested," but was "irrelevant."  *Id.*  Amazon claimed that "it terminated its relationship with Plaintiffs based on Mr. Allen's public statements *in and after October 2017* in relation to the #MeToo movement," but it did not identify such "public statements" or any other conduct upon which it purportedly based its termination.  *Id.*

On July 31, 2019, this Court granted Amazon's partial motion to dismiss Plaintiffs' claims for: (1) breach of the MAA; (2) breach of the implied covenant of good faith and fair dealing in the MAA; (3) breach of the implied covenant of good faith and fair dealing in the *Rainy Day* SPA; and (4) unjust enrichment.  Dkt. 49.  With respect to the implied covenant claim under the *Rainy Day* SPA, the Court found that Plaintiffs "have not identified an implied promise that does not duplicate Amazon's obligations under the Rainy Day Agreement."  *Id.* at 13.

## III.   Amazon's Affirmative Defenses

On August 13, 2019, Amazon filed its Answer which includes seven affirmative defenses. Dkt. 52.  In particular, Amazon's First Affirmative Defense for "Breach of Contract" alleges:

> Plaintiffs' claims are barred, in whole or in part, because Plaintiffs breached the covenant of good faith and fair dealing that is implied into the SPAs through their statements and conduct in relation to the #MeToo movement in and after October 2017, by which Woody Allen made himself a self-described "pariah" in the film industry and deprived Amazon of the right and ability to receive the intended benefits of those agreements.

*Id.* at 11.

4

Amazon's Fourth Affirmative Defense for "Acts of Others" alleges:

> Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs' alleged damages resulted from the acts or omissions of Plaintiffs or other persons or entities over which Amazon had no control.

*Id.*

Amazon does not allege any other facts in support of these affirmative defenses.

## LEGAL STANDARD

Under Rule 8(c), "[i]n responding to a pleading, a party must affirmatively state any … affirmative defense."  Fed. R. Civ. P. 8(c).  Pursuant to Fed. R. Civ. P. 12(f), a court may strike "an insufficient defense."  While motions to strike affirmative defenses "are not generally favored," they should be granted "when the defenses presented are clearly insufficient."  *Employers Ins. Co. of Wausau v. Crouse-Cmty. Ctr., Inc.*, 489 F. Supp. 2d 176, 179 (N.D.N.Y. 2007) (quotations and citations omitted).

On a Rule 12(f) motion, the Court "must accept the matters well-pleaded as true and should not consider matters outside the pleadings."  *Id.*  Under Federal Rule of Evidence 201, a court may also take judicial notice, at "any stage of the proceeding," of any fact "that is not subject to reasonable dispute because" it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2), (d).  The Court may "consider matters of which judicial notice may be taken" on a Rule 12(f) motion to strike as well.  *Cty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002).  As requested by Plaintiffs herein, the Court thus may properly take judicial notice of "matters of public record," such as Amazon's prior filings and the Court's orders, and "newspaper articles" without converting the

motion into one for summary judgment.[2]  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008) ("[M]atters judicially noticed by the District Court are not considered matters outside the pleadings," and thus it was "proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents" (emphasis in original)).  Upon granting a Rule 12(f) motion, the Court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *New London Assocs., LLC v. Kinetic Soc. LLC*, 2019 WL 2918163, at *1.

The Second Circuit recently clarified the standard applicable to Rule 12(f) motions to strike affirmative defenses.  In *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95–96 (2d Cir. 2019), the Second Circuit considered whether the *Iqbal/Twombly* pleading standard for motions to dismiss applies to motions to strike affirmative defenses.  As this Court recently recognized, the Second Circuit's *GEOMC* decision made "clear that the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) applies to the pleading of affirmative defenses, albeit in a 'context-specific' way."  *New London Assocs.*, 2019 WL 2918163, at *1.  This Court further noted that "context-specific" means that an affirmative defense may not need to "be pleaded with the same

---

[2]  Accordingly, this Court may take judicial notice of Amazon's partial motion to dismiss and this Court's decision granting the same which are part of the public record, as well as the existence and publication of relevant articles in the press.  *See In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671, 686 (S.D.N.Y. 2012) (Cote, J.) (taking judicial notice of the "contents of articles cited in the Complaint," but "only in order to determine 'what statements they contained.'" (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see also Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, 2013 WL 417406, at *7 (S.D.N.Y. Feb. 4, 2013) (taking judicial notice of the complaint and answer, among other documents, as "such documents as matters of public record"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 433 (S.D.N.Y. 2003) ("The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment.").

degree of factual detail as a complaint," as it is raised in an answer (rather than a complaint) and often prepared within a shorter time frame.  *Id.*  Courts also should consider whether the facts necessary to plead an affirmative defense are "readily available" to the defendant.  *GEOMC*, 918 F.3d at 98.

Accordingly, the Second Circuit concluded that a Rule 12(f) motion to strike an affirmative defense should be granted if: (1) the pleading fails to satisfy the *Twombly* "plausibility" standard, *i.e.*, to allege sufficient facts to state a plausible affirmative defense on its face;  (2) it fails to allege a legally sufficient basis for "precluding a plaintiff from prevailing on its claims"; and (3) the plaintiff would be prejudiced by inclusion of the defense.  *GEOMC*, 918 F.3d at 98; *New London Assocs.*, 2019 WL 2918163, at *1; *see also S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) (original three-part test).[3]

## ARGUMENT

### I.  Amazon's Implied Covenant Defense Should be Stricken

Amazon's First Affirmative Defense for breach of the covenant of good faith and fair dealing is entirely devoid of facts stating a plausible defense, lacks any sufficient legal basis, and its inclusion in this litigation will substantially prejudice Plaintiffs and vastly expand the scope of discovery and trial in this straightforward breach of contract action.  It therefore should be stricken pursuant to Rule 12(f) and the Second Circuit's decision in *GEOMC*.

New York law recognizes an implied covenant of good faith and fair dealing in every contract, *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007), which applies "where an implied promise is so interwoven into the contract 'as to be necessary for

---

[3]    The Second Circuit in *GEOMC* "reworded" the first *McCaskey* factor to impose the *Twombly* plausibility standard; originally, the *McCaskey* court set forth a more stringent factor requiring the plaintiff to show that "there is no question of fact which might allow the defense to succeed."  *McCaskey*, 56 F. Supp. 2d at 326.

effectuation of the purposes of the contract.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted).  However, the implied covenant "does not create new contractual rights that are not enumerated in the express contract." *Id.* (citations omitted).  And, as this Court recognized when granting Amazon's partial motion to dismiss,[4] "under New York law, the implied covenant of good faith and fair dealing cannot be used to impose an obligation that is inconsistent with express contractual terms."  Dkt. 49 at 11 (quoting *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015)).  Rather, it only may be enforced if it would be "in furtherance of other terms of the agreement."  *Harmon v. Adirondack Cmty. Coll.*, 12 A.D.3d 746, 748 (3rd Dep't 2004).

Accordingly, Amazon must "spell[] out the basis" for its defense, as well as the express terms of the contract which it furthers, in order to survive a motion to strike.  *See 511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153–54 (2002).  "[C]onclusory assertions, absent any supporting factual allegations are insufficient as a matter of law," as "[t]he pleadings themselves must provide the plaintiff and the Court with notice as to how the defense applies to the plaintiff's claims." *In re Beacon Assocs. Litig.*, 2011 WL 3586129, at *1 (S.D.N.Y. Aug. 11, 2011) (citations omitted).  "The existence of some unknown and hypothetical set of facts that could support these defenses" is insufficient to survive a Rule 12(f) motion to strike.  *Cartier Int'l AG v. Motion in Time, Inc.*, 2013 WL 1386975, at *3 (S.D.N.Y. Apr. 5, 2013).

---

[4]  For the reasons set forth *supra* (Mot. at 5-6 & n.2), Plaintiffs respectfully request that the Court take judicial notice of its prior decision on Amazon's partial motion to dismiss, (Dkt. 49), from this Court's "own records."  *See Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) (finding that "a court is permitted to take judicial notice of public records, which includes complaints and other documents filed in federal court").

## A.    _The First Affirmative Defense Is Not Plausible_

Under the first factor of the Second Circuit's test for Rule 12(f) motions, Amazon must show that its First Affirmative Defense meets the "plausibility" requirement in the _Iqbal/Twombly_ test for motions to dismiss.  _GEOMC_, 918 F.3d at 98; _see Coach, Inc. v. Kmart Corps._, 756 F. Supp. 2d 421, 425–26 (S.D.N.Y. 2010) ("In considering the sufficiency of a defense under the first two prongs of the analysis [for Rule 12(f) motions], courts apply the same standard applicable to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); _FSP, Inc. v. Societe Generale_, 2005 WL 475986, at *8 (S.D.N.Y. Feb. 28, 2005) (same).  Courts in the Southern District of New York have explained that _Twombly_ "obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim _plausible … _The question is whether the pleading alleges enough facts to state a claim for relief that is plausible on its face."  _Aspex Eyewear, Inc. v. Clariti Eyewear, Inc._, 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008) (granting Rule 12(f) motion to strike when the defendant "merely asserts these claims and defenses without alleging even general facts to support them … nor does [the defendant] even refer to the elements of the various affirmative defenses"); _Tracy v. NVR, Inc._, 2009 WL 3153150, at *8 (W.D.N.Y. Sept. 30, 2009), _report and recommendation adopted as modified,_ 667 F. Supp. 2d 244 (W.D.N.Y. 2009) (finding that affirmative defenses pled "in simple conclusory terms, unsupported by any factual allegations," were "plainly deficient under the _Iqbal_ standard and should be stricken").

### 1.    The "Context" Here Does Not Require a Relaxed Plausibility Standard

While the _Iqbal/Twombly_ standard is applied in a "context-specific" manner for motions to strike affirmative defenses, _New London Assocs., LLC_, 2019 WL 2918163, at *1, there is no reason to apply a relaxed standard here.  Amazon's affirmative defense is not based on facts that "may not be readily known to the defendant" "without the benefit of discovery" that might warrant applying a

lesser plausibility standard. *Id.* (discussing the "context-specific" manner in which courts should conduct a Rule 12(f) plausibility analysis). Rather, Amazon's First Affirmative Defense is based entirely on (unspecified) *public* statements made *prior* to its termination of the contracts on June 19, 2018, so any facts purportedly supporting the defense were "readily available" to Amazon over a year prior to filing its Answer on August 13, 2019. *See GEOMC*, 918 F.3d at 98. Furthermore, the Complaint was filed on February 7, 2019, over six months before the Answer was filed. Therefore, Amazon had substantial time to prepare its affirmative defense, based on public statements that it knew about long before filing its Answer.[5]

Consequently, Amazon must show that its First Affirmative Defense contains sufficient factual allegations to render the defense "plausible" under *Iqbal/Twombly*. It cannot do so.[6]

2.     The First Affirmative Defense Fails to Satisfy the First Factor of the
*GEOMC* test

Amazon's First Affirmative Defense fails to allege sufficient facts to state a plausible defense, and is therefore insufficient under the first factor enunciated in *GEOMC*. 918 F.3d at 95 (striking affirmative defense that "lacked any indication" of the specific conduct to support the defense); *see also United States v. Oswego Falls Corp.*, 113 F.2d 322, 325 (2d Cir. 1940) (affirming trial court's order striking "groundless" affirmative defenses of duress and mutual mistake where

---

[5]   And regardless, Amazon did receive the benefit of discovery prior to filing its Answer on August 13, 2019, as the parties had already produced and received thousands of documents in discovery several weeks before its Answer was due. *See* Declaration of Julia M. Beskin, dated September 3, 2019, at ¶¶ 4-5 (noting that, prior to Amazon filing its Answer, "Plaintiffs had produced more than 3,850 documents to Amazon in response to Amazon's RFPs" and "Amazon produced over 3,300 documents in response to Plaintiffs' document requests"); *see also* Dkt. 44 at 1 n.1 (informing the Court that as of July 22, 2019, Plaintiffs "produced over 2,600 documents" and Amazon had produced "less than 1,500 documents," and that the parties "agreed to produce additional documents on July 31, 2019").

[6]   Even if a more relaxed standard was necessitated by the "context" here, Amazon's conclusory First Affirmative Defense, lacking *any* factual allegations, is deficient under Rule 12(f).

"[n]o facts were pleaded showing duress."). The absence of *any* factual allegations renders the defense fatally deficient under the Rule 12(f) analysis. *See Coach*, 756 F. Supp. 2d at 426 (striking affirmative defenses where the pleadings were "void of any facts supporting" them); *De Pasquale v. Williams-Bauer Corp.* 151 F.2d 578, 579 (2d Cir. 1945) (affirmative defense of "payment" against employees' claims of unpaid wages was properly stricken when "no facts were pleaded to show that the plaintiffs were paid in accordance with the requirements of the statute.").

*First*, Amazon fails to identify *any* statement or conduct by Mr. Allen on which it bases its defense. Instead, Amazon merely pleads in conclusory terms that Plaintiffs' claims are barred because Plaintiffs "breached the covenant of good faith and fair dealing" by some unspecified "statements and conduct" since October 2017. Amazon's "mere recitation of the legal buzzwords" cannot sustain its affirmative defense, as it "offers no indication of how the doctrine of [breach of implied covenant] would bar Plaintiffs' claims." *Cartier Int'l AG*, 2013 WL 1386975, at *3 (citations omitted).

The only "statement" alleged in Amazon's pleading is that Mr. Allen described himself as a "pariah," and there is not even a hint of the allegedly offending "conduct." *See* Ans. at 11 (conclusory allegation that "Plaintiffs breached the covenant … through their statements and conduct… by which Woody Allen made himself a self-described 'pariah' in the film industry"). Moreover, it is undisputed that the "pariah" comment was not published until September 2018, three months *after* Amazon terminated the MAA and the SPAs. *See* Dkt. 25 at 3 & n. 9 (Amazon's motion to dismiss confirming the "pariah" comment was published on September 16, 2018).[7] Furthermore, the *complete* quote shows it occurred during an interview with Mr. Allen's wife, Soon-

---

[7] For the reasons set forth *supra* (Mot. at 5-6 & n.2), Plaintiffs respectfully request that the Court take judicial notice of the undisputed existence and publication of the article containing Mr. Allen's "pariah" comment in September 2018. *See* Daphne Merkin, *Introducing Soon-Yi Previn*, Vulture (Sept. 16, 2018), https://www.vulture.com/2018/09/soon-yi-previn-speaks.html.

Yi Previn, concerning some people's reactions to their *marriage*, and not "in relation to the #MeToo movement" or the contracts with Amazon.[8]  Amazon offers nothing to plausibly allege that this comment shows Mr. Allen "made himself" a "self-described 'pariah'" from "statements and conduct" regarding #MeToo.

Amazon's pleading lacks even a single factual allegation of any "statement" or "conduct" by Plaintiffs which could constitute a breach of the implied covenant of good faith and fair dealing.  *See Obabueki v. Int'l Bus. Machs. Corp.*, 145 F.Supp.2d 371, 401 (S.D.N.Y. 2001) (striking affirmative defense, explaining that pleading the words "unclean hands" without more "is not a sufficient statement of such defense" and gave "no indication as to how the doctrine of unclean hands would bar his claims"); *Michaan v. Gazebo Horticultural, Inc.*, 117 A.D.3d 692, 693–94 (2nd Dep't 2014) (affirming dismissal of implied covenant claim when the pleading did not "contain any allegation that the defendants sought to prevent the performance of a contract, or to withhold the benefits of a contract from the plaintiffs").

This fatal deficiency is further compounded by the fact that Mr. Allen has made many public statements since October 2017, yet Amazon fails to identify *which* alleged statement(s) purportedly violated an implied duty under any contract and how it would do so.  For example, Allen has been criticized for saying that he should be a "poster boy for the #Me Too movement" for the following reasons:

> I have worked in movies for 50 years.  I've worked with hundreds of actresses, hundreds, and not a single one, big ones, famous ones, ones starting out, have ever … suggested any kind of impropriety at all.  I've always … had a wonderful record with them.  I've created wonderful roles for many women.  There have been 60, 65 award nominations for the women that have worked in my movies.  I've used hundreds of women, I mean over 200 women in the crew of my movies, behind the camera…, for years, hundreds of them…

---

[8]  *See id.*  ("'I am a pariah,' [Mr. Allen] says one day when he joins us for lunch, wearing his usual outfit of a light-blue button-down and rumpled khakis.  'People think that I was Soon-Yi's father, that I raped and married my underaged, retarded daughter.'").

We've always paid them the exact equal amount as we've paid the men. So we have a wonderful record. So I'm very much on their side and in their corner and feel part of that. I'm in principle and in spirit completely in favor of their bringing to justice genuine harassers.[9]

Perhaps Mr. Allen's "poster boy" comment is the basis of Amazon's defense that purportedly justifies its termination of the MAA and four SPAs. If so, Plaintiffs (and Amazon) will have to produce evidence and conduct discovery on many of the statements made. But Amazon does not say if it terminated because of that comment or how that comment could have breached any implied duty under any contract.

*Second*, Amazon's First Affirmative Defense fails to meet the plausibility standard for the additional, independent reason that Amazon does not even identify an implied contractual obligation or duty in the MAA or the SPAs which Plaintiffs allegedly breached. Amazon argued in its reply brief on its partial motion to dismiss that Plaintiffs' implied covenant claims failed "because Plaintiffs have not alleged any implied duty that Amazon failed to perform, nor have they alleged that Amazon performed its express contractual obligations in bad faith." Dkt. 41 at 5. Yet Amazon's affirmative defense fails to allege any implied duty or bad faith performance of any express term, let alone how the unspecified "statements and conduct" could have breached any such implied duty or constituted such bad faith performance.

In fact, Amazon cannot do so because its First Affirmative Defense is "inconsistent with the terms of the parties' agreement." *See Marine Midland Bank. v. Yoruk*, 242 A.D.2d 932, 933 (4th Dep't 1997) (affirming dismissal of implied covenant affirmative defense because it is "well settled

---

[9]      For the reasons set forth *supra* (Mot. at 5-6 & n.2), Plaintiffs respectfully request that the Court take judicial notice of the undisputed existence and publication of the video interview containing Mr. Allen's "poster boy" comment in June 2018. *See Los 5 mejores momentos de la entrevista de Jorge Lanata a Woody Allen*, Infobae, June 4, 2018, https://www.infobae.com/teleshow/infoshow/2018/06/04/los-5-mejores-momentos-de-la-entrevista-de-jorge-lanata-a-woody-allen/ (third video clip of Mr. Allen at 3:45 - 5:35).

that an obligation may not be implied that would be inconsistent with other terms of the contractual relationship") (citations omitted); *see also 1357 Tarrytown Rd. Auto, LLC v. Granite Props., LLC*, 142 A.D.3d 976, 977 (2d Dep't 2016) (holding that an implied covenant claim should have been dismissed when it would, *inter alia*, "create additional obligations not contained" in the parties' agreements ); *Cohen v. Elephant Wireless, Inc.*, 2004 WL 1872421, at *7 (S.D.N.Y. Aug. 19, 2004) ("Courts will not find an implied covenant when doing so is unnecessary to give effect to the terms of the contract.").

The MAA and the SPAs were fully integrated, written agreements that "should as a rule be enforced according to [their] terms." *Id.* (noting the contract's integration clause and dismissing affirmative defenses based on breach of alleged implied promises which conflicted with "the explicit language requiring modifications to be in writing"). The MAA and the SPAs contain integration clauses providing that the written documents "set[] forth the entire and binding agreement between the Parties with respect to the subject matter hereof, and, will supersede and replace all prior or contemporaneous written or oral agreements pertaining hereto and can only be modified by a writing signed by both Parties." Dkt. 1-1 at 15 ("Entire Agreement" clause in MAA).

The absence of any allegations identifying an implied duty which could be breached by Mr. Allen's "statements and conduct" is particularly significant here where the parties negotiated and agreed to express provisions concerning termination and publicity for Mr. Allen's films. The contracts only allow termination by Amazon if Plaintiffs fail to timely produce and deliver a film: "If [Gravier] fails to Deliver any Picture licensed hereunder by the Outside Delivery Date, [Amazon] will have no obligation to license that Picture *or any subsequent Picture*." Dkt 1-1, MAA ¶ 8(a) (emphasis added); *see also id.* at 26 (*Wonder Wheel* contract granting Amazon the right "to terminate this Agreement," but *only if* Gravier "does not or cannot complete Delivery by the Outside

Delivery Date or [Gravier] abandons the Picture").  Because the contracts only permitted Amazon to terminate upon the failure to produce and deliver a film, a termination provision based on some undescribed "statements" or "conduct" cannot be implied into the contracts.

In addition, the contracts expressly provide that: (1) Amazon "acknowledges that Allen is not contractually obligated to perform publicity services in connection with this Agreement," other than providing two quotes for press releases, *id.* ¶ 9(c); and (2) Gravier was only prohibited from making an "announcement in connection with this Agreement," such as "press releases and social media mentions," without Amazon's consent, *id.*  If Amazon contracted away any right to restrict what Mr. Allen could say in an interview about social issues or old public allegations that had been made against him, it is not plausible that the contracts contain an implied term to that effect.  Amazon simply has failed to allege the nature of any implied term and how it relates to the express terms of the contracts.

In *Murphy v. American Home Products*, the New York Court of Appeals rejected the proposition that an implied covenant to treat and terminate employees in good faith should be read into an at-will employment contact.  58 N.Y.2d 293, 304 (1983).  The Court recognized that any implied obligation must be "in aid and further of," and not "inconsistent with," the express "terms of the agreement of the parties," and concluded that it would be "incongruous" to infer that the employer impliedly agreed to an obligation "which would be destructive of his right of termination" inherent in at-will employment contracts.  *Id.* at 304-05.

Amazon's failure to allege any statement or conduct, any particular implied duty, how any implied duty relates to the terms of any contract, or any facts concerning how such an implied duty was allegedly breached, renders its defense implausible under the *Iqbal/Twombly* standard.  Accordingly, the first prong of the *GEOMC* analysis is satisfied.

15

**B.**     ***There Is No Legally Sufficient Basis Supporting the First Affirmative Defense***

The Courts must next consider whether there is a legally sufficient basis for Amazon's First Affirmative Defense. *GEOMC*, 918 F.3d at 98. For example, in *S.E.C. v. KPMG LLP*, this Court granted a motion to strike when, even accepting the defendants' version of events as true, their allegations that the SEC made certain oral representations "cannot as a matter of law establish" any of the three equitable affirmative defenses they raised. 2003 WL 21976733, at *3–4 (S.D.N.Y. Aug. 20, 2003) (Cote, J.); *see also Nat'l Credit Union Admin. Bd.*, 2014 WL 1673351, at *3 (granting a motion to strike certain affirmative defenses which "do not exist under [the applicable law] under which this action now proceeds," leaving "no question of law or fact that would permit these defenses to succeed").

There is no "legally sufficient basis" upon which Amazon's affirmative defense could preclude a finding of breach of contract. Because Amazon's pleading is "void of any facts supporting a [legal] defense" based on the implied covenant, and there is "no indication" that either a relevant implied contractual term exists or how any statement or conduct by Plaintiffs could have breached that implied term, there is no applicable legal theory constituting a defense. *See Coach*, 756 F. Supp. 2d at 426 (granting motion to strike affirmative defenses). "Nothing in the pleadings indicates that there was any conduct by either party from which" an implied duty to refrain from unspecified statements and conduct concerning the *entirely extra-contractual issue* of the #MeToo movement "could be inferred." *See id.* at 427.

Courts routinely reject attempts to imply new grounds for terminating a contract beyond the express terms. *See generally United States v. Winstar Corp.*, 518 U.S. 839, 905-06 (1996) (noting that "[i]f [the risk] was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed"); *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 570 (2002) (holding that courts may not alter or add terms in a

16

contract "to reflect its personal notions of fairness and equity").  Amazon's vague implied covenant defense amounts to little more than an attempt to unilaterally rewrite a contract and its terms that were negotiated at arm's length.  "Had it been intended to be made a provision of the contract in this case, it should have been expressed therein … it cannot now be injected or substituted for another word to preserve the company from liability." *Brandt v. Godwin*, 3 N.Y.S. 807, 812 (City Ct. 1889) (holding that a contract allowing for termination for "incompetency" did not extend to termination for "dissatisfaction" with an artist's work).

Indeed, there is no provision in the contracts allowing Amazon to terminate the contracts based on Plaintiff's statements regarding social issues or allegations made against Mr. Allen.  *See* Section I(A)(2), *supra*, at 14-15.  Nor is there any law providing that such a clause could be implied in the MAA or the SPAs when not expressly set forth by two sophisticated parties negotiating a multi-year, multi-million dollar commercial transaction.  There is no basis, under the contracts or New York law, on which Amazon can escape liability from breaching the contracts merely because Mr. Allen made some such statements even if they made the contracts less profitable for Amazon. *See generally A + E Television Networks, LLC v. Wish Factory Inc.*, 2016 WL 8136110, at *14 (S.D.N.Y. Mar. 11, 2016) (finding that publication of "offensive comments" by a known public figure causing a "decline of the popularity" of a television show and the "profitability" of a contract was a foreseeable risk assumed by the merchandising manufacturer); *Rockland Dev. Assocs. v. Richlou Auto Body, Inc.*, 173 A.D.2d 690, 690 (2d Dep't 1991) (finding that a contract cannot be terminated because "the transaction has become less profitable for the affected party or even that he will sustain a loss" due to the other party's actions).

17

Thus, there is no legally sufficient basis for Amazon's implied covenant affirmative defense. *Coach*, 756 F. Supp. 2d at 427.  Accordingly, the second prong of the *GEOMC* analysis for Rule 12(f) motions is satisfied.

### C.   *The First Affirmative Defense Is Prejudicial to Plaintiffs*

Finally, the last prong of the *GEOMC* test is easily met, as Plaintiffs would be substantially prejudiced by allowing Amazon's vague and conclusory affirmative defense to remain in this litigation.  *GEOMC*, 918 F.3d at 98.  As this Court has recognized, prejudice can be established by mere "notice" that the defendants will seek discovery "to support these defenses."  *KPMG LLP*, 2003 WL 21976733, at *3-4.  In addition, "[i]ncreased time and expense of trial may constitute sufficient prejudice to warrant granting plaintiff's Rule 12(f) motion."  *Nat'l Credit Union Admin. Bd.*, 2014 WL 1673351, at *2, *7 (citation omitted) (further finding that "the possible cost of discovery related to these insufficient defenses constitutes sufficient prejudice"); *see also Coach, Inc.*, 756 F. Supp. 2d at 428.

Here, Amazon has served several document requests on Plaintiffs, as well as third party subpoenas, relating to its First Affirmative Defense.  *See* Beskin Decl. at ¶¶ 6-8.  The parties already have diverted significant time and resources from this straightforward breach of contract action to litigate Amazon's changing rationale for its unjustified termination of the MAA and the SPAs, and further discovery and motion practice will be unavoidable if the affirmative defense is not stricken.

Accordingly, the third and final prong of the *GEOMC* analysis for Rule 12(f) motions is satisfied.

### D.   *Amazon's First Affirmative Defense Must be Stricken*

Amazon's Answer plainly lacks allegations necessary to support its First Affirmative Defense.  Its failure to allege any particular "statement" or "conduct," the existence of an implied duty consistent with the MAA and the SPAs, or how any "statement" or "conduct" breached such an

implied duty, renders the First Affirmative Defense "insufficient" under Rule 12(f) and the three-part *GEOMC* test.  Therefore, it should be stricken.

## II.   <u>Amazon's "Acts of Others" Affirmative Defense Should Be Stricken</u>

Amazon's Fourth Affirmative Defense  alleges that Plaintiffs' breach of contract claims are barred because Plaintiffs' damages "resulted from the acts or omissions of Plaintiffs or other persons or entities over which Amazon had no control."  Ans. at 11.  Nothing more is alleged.  For the reasons discussed above, the Fourth Affirmative Defense fails all three prongs of *GEOMC* test and must be stricken.  Amazon's pleading fails to set forth any facts which might render the Fourth Affirmative Defense "plausible," failing step one, or any facts which support a substantial legal basis on which it might succeed, failing step two, and is prejudicial, failing step three.

*First,* Amazon gives absolutely no indication what "acts" or "omissions" other than Amazon's own termination of the MAA and the SPAs caused Plaintiffs' damages.  Nor does Amazon indicate who the "other persons or entities" could be, let alone how they could have acted in a way to bar Plaintiffs' claims.  No other information is provided to "spell[] out the basis for their claim," *511 W. 232nd Owners Corp.*, 98 N.Y.2d at 154, and Amazon fails to give any "notice as to how the defense applies to the plaintiff's claims."  *See In re Beacon Assocs. Litig.*,  2011 WL 3586129, at *1.

*Second*, Amazon fails to allege how acts of "other persons or entities" could legally bar Plaintiffs' breach of contract claims when Amazon's own Answer admits that it is the counter-party to the contracts, and it—and no one else—terminated the contracts and refused to distribute the films, the acts on which the breach of contract claims are based.  *See generally Vision Entm't Worldwide, LLC v. Mary Jane Prods., Inc.*,  2014 WL 5369776, at *3 (S.D.N.Y. Oct. 17, 2014) (finding that anticipatory repudiation can be decided as a matter of law when made unambiguously and in writing).  It is a conclusory affirmative defense premised entirely, at best, on the "existence of

'some unknown and hypothetical set of facts'" which do not excuse a breach of contract.  *See Cartier Int'l AG*, 2013 WL 1386975, at *3.

      *Third,* as with the First Affirmative Defense, engaging in discovery, motion practice, and the "increased time and expense of trial" resulting from litigating a baseless affirmative defense is "sufficient prejudice to warrant granting [Plaintiffs'] Rule 12(f) motion." *Nat'l Credit Union Admin. Bd.*, 2014 WL 1673351, at *2.  Furthermore, because Amazon did not identify the "other persons or entities" that allegedly committed the unspecified "acts or omissions," Plaintiffs would not even be able to take discovery from those "persons or entities."[10]

      *GEOMC* is particularly instructive here.  In that case, the district court granted a motion to strike affirmative defenses based on the plaintiff's "own negligent misconduct and actions or that [of] third parties" and its failure to "join a necessary party," because they were "vague allegations regarding the actions of unnamed third parties, raising concerns of both legal sufficiency and prejudice to GEOMC." *GEOMC Co. v. Calmare Therapeutics, Inc.*, 2016 WL 6122930, at *5 (D. Conn. Oct. 19, 2016), *aff'd*, 918 F.3d 92 (2d Cir. 2019).  The Second Circuit affirmed, holding that the affirmative defense regarding plaintiff's negligence "lacked any indication of what conduct by GEOMC or others might have been a defense to the breach of contract claim," and the "necessary party" defense "lacked any indication of which party needed to be joined or why." *GEOMC*, 918 F.3d at 99.  Amazon's defense is similarly insufficient.

      Therefore, Amazon's Fourth Affirmative Defense should be stricken.

---

    [10]  It should be noted that fact discovery must be completed by November 1, 2019, (Dkt. 48). Accordingly, Plaintiffs may not be able to propound written discovery on Amazon and then take necessary depositions before discovery is cut off.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion be granted in its entirety and that Amazon's First and Fourth Affirmative Defenses be stricken pursuant to Federal Rule of Civil Procedure 12(f).

<div style="margin-left:40%">

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
  /s/ *Julia M. Beskin*
_____
Julia M. Beskin
juliabeskin@quinnemanuel.com
Donald J. Reinhard, II
donaldreinhard@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000 (tel.)

John B. Quinn
johnquinn@quinnemanuel.com
Gary E. Gans (*pro hac vice*)
garygans@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000 (tel.)

*Attorneys for Plaintiffs Gravier Productions, Inc. and Woody Allen*

</div>